**BIRCH CREEK IRRIGATION and Marvin R. Mayers, Plaintiffs and Appellees,**

v.

**Earl J. PROTHERO and Lynn Prothero, Defendants and Appellants.**

No. 920093.

Supreme Court of Utah.

Aug. 12, 1993.

Andrew B. Berry, Jr., Moroni, for plaintiffs and appellees.

A. Dean Jeffs, Provo, for defendants and appellants.

DURHAM, Justice:

Defendants Earl and Lynn Prothero appeal from the findings and order of the Sixth Judicial District Court in their dispute with plaintiffs Birch Creek Irrigation and water master Marvin Mayers. Initially, Birch Creek obtained a temporary restraining order against the Protheros. Then, at a hearing on Birch Creek's motion for a preliminary injunction, the district court found Lynn Prothero in contempt of court and permanently enjoined both defendants from interfering with the water master or with Birch Creek's water or other assets. We vacate the permanent injunction and hold that the temporary restraining order has expired. We refer the case back to the district court for a trial on the merits.

In a 1977 action, the district court granted Birch Creek immediate occupancy of certain property owned by the Protheros, who are shareholders in the irrigation company. Birch Creek sought to condemn the property for construction and maintenance of an irrigation pond and pipeline. The court ordered Birch Creek to construct a chain link fence around the pond and specifically prohibited another shareholder, Marvin Mayers, from entering the property during construction.[1] In 1979, by stipulation of the parties, Birch Creek acquired title to a portion of the Prothero property, as well as an easement to maintain the water line and the right of ingress and egress over the Protheros' property to access its water storage site and water lines.

In 1990, Birch Creek hired Mayers for the position of water master, over the Protheros' objection. On June 9, 1991, Mayers entered the Prothero property and failed to leave when asked. As Mayers was walking about the property, Lynn Prothero took the ignition keys and coil wire from Mayers' truck. When Mayers returned, Prothero informed him that he was impounding the truck as evidence that Mayers was violating the court order from the earlier condemnation action.[2] Mayers left and returned the next day with another shareholder.

On June 27, 1991, Birch Creek and Mayers filed a complaint against the Protheros, seeking damages for the Protheros' conduct and a permanent injunction to prevent further interference by them. They also moved for a temporary restraining order and preliminary injunction. The next day, without notice to the Protheros, the district court signed a temporary restraining order and ordered the sheriff to take possession of the truck. The temporary restraining order expired automatically on July 8, 1991, at 11:14 a.m. The hearing on the motion for preliminary injunction was scheduled for July 17, 1991, but was continued by stipulation until July 31, 1991.

Birch Creek contends that the stipulation also extended the temporary restraining order. The Protheros disagree. The unsigned minute entry from the hearing at which the continuance was granted indicates that the Protheros' attorney was not present to contradict Birch Creek's representation to the court. Birch Creek's attorney represented to the court that both sides had agreed to extend the restraining order until the July 31, 1991 hearing; however, the Protheros' counsel now insists that he stipulated only to continue the hearing. The minute entry states that the restraining order would remain in effect until July 31, 1991, but both the signed stipulation for continuance and the signed order state only that the hearing was to be continued by agreement of the parties. Both the stipulation and the order are silent as to the restraining order.

On July 17, 1991, Mayers attempted to enter the Prothero property. Lynn Prothero informed him that the temporary restraining order had expired and refused to let him enter the property. Instead, he checked the water level in the pond for Mayers and reported that it was low. Mayers and Birch Creek, believing that the stipulation had extended the temporary restraining order, asserted that Prothero's behavior violated that order.

On July 31, 1991, the court considered and granted Birch Creek's motion for a preliminary injunction, found Lynn Prothero in contempt of court for his actions of July 17, 1991, and sentenced him to thirty days in jail. The court stayed the sentence until trial on the condition that there would be no further violations of court orders. On November 20, 1991, Birch Creek filed its proposed findings and order with the court. The language of the order described the injunction as permanent. That

---

**1.** Mayers, who later became Birch Creek's water master, was apparently restricted from the property because of conflicts that arose between him and the Protheros while Birch Creek was seeking occupancy rights.

**2.** Although the order of immediate occupancy prohibited Mayers from entering the Prothero property only during the period of construction, the Protheros allegedly believed, based upon the court proceedings and minute entries in the condemnation action, that the prohibition remained in effect.

same day, Birch Creek notified the Protheros that they had five days to object to the proposed order. The court signed the order the next day without notice to the Protheros, who moved on November 25, 1991, to extend the time to object. Their request was subsequently granted, and objections were filed on January 14, 1992.

At a January 22, 1992 hearing, the court acknowledged that it had signed the order before receiving the objections but held that the order stood as signed. On February 11, 1992, after submitting two proposed orders that the court did not sign, the Protheros filed a petition for an interlocutory appeal with this court, which we granted on April 13, 1992.

In the meantime, on March 30, 1992, the district court heard argument on the objections to the proposed order. The parties agreed to strike the paragraphs of the order pertaining to the contempt charge, and the trial court stated that it would set aside the charge. After that ruling, this court dismissed the petition for interlocutory appeal as moot because it was based on the contempt charges. We subsequently granted the Protheros' motion for reconsideration and vacated the order dismissing the interlocutory appeal.

The Protheros advance numerous arguments on appeal, which we summarize as follows: First, they assert that we should vacate the finding of contempt and the corresponding jail sentence. Second, they contend that the order granting the permanent injunction should be vacated. Third, they assail the original temporary restraining order for failure to comply with the requirements of rule 65A of the Utah Rules of Civil Procedure.

Birch Creek responds on both procedural and substantive grounds. Procedurally, it argues that the appeal was not timely and that the Protheros have failed to marshal the evidence in challenging the trial court's findings. Substantively, it asserts that the appeal is frivolous and that the restraining order and permanent injunction were necessary and properly issued. In addition, it maintains that the contempt claim is moot.

■ Before turning to the significant substantive issues, we dispose of the procedural arguments, the frivolous appeal claim, and the contempt issue. We find no merit in the arguments that the Protheros' appeal was untimely and that they failed to marshal the evidence; we therefore decline to address them in any detail. The notion that this appeal is frivolous is similarly without merit, as the analysis below will illustrate. With respect to the contempt charges, we agree with Birch Creek that the issue is moot because the trial court agreed to set aside the charges; the Protheros' counsel conceded as much at oral argument before this court. However, the order has not been amended to remove the charge, and we therefore instruct the trial court to exclude the contempt findings from any further orders resulting from the trial on the merits of this case.

■ Turning now to the remaining substantive issues, we first consider whether the permanent injunction was proper. We will not disturb a trial court's judgment granting or refusing an injunction unless the court abused its discretion or the judgment rendered is clearly against the weight of the evidence. *System Concepts, Inc. v. Dixon*, 669 P.2d 421, 425 (Utah 1983).[3]

■ Applying that standard, we agree with the Protheros that the trial court erred in converting the temporary restraining order into a permanent injunction when the motion under consideration contemplated only a preliminary injunction. Ordinari-

---

**3.** Birch Creek characterizes the Protheros' appeal as attacking findings of fact. Relying on *Doelle v. Bradley*, 784 P.2d 1176, 1178 (Utah 1989), they assert that the Protheros must show that the evidence supporting the findings, if viewed in the light most favorable to the trial court, is not legally sufficient to support the findings. This misconstrues the nature of the challenge. The Protheros are not attacking the sufficiency of the evidence; rather, they are arguing that the trial court did not comply with the requirements of the applicable rules as a matter of law in granting the permanent injunction and temporary restraining order. Therefore, the Protheros were not required to marshal the evidence in the manner contemplated by *Doelle*.

ly, a permanent injunction will be granted only after a full trial on the merits. *Atomic Oil Co. v. Bardahl Oil Co.*, 419 F.2d 1097, 1103 n. 11 (10th Cir.1969); *Chappell & Co. v. Frankel*, 367 F.2d 197, 203 (2d Cir.1966). The issues raised on a motion for a preliminary injunction are distinct from those raised when a permanent injunction is sought. *Chappell*, 367 F.2d at 203. Here, the only issues properly before the trial court were those pertaining to the preliminary injunction, and it was an abuse of discretion for the trial court to grant a permanent injunction before resolving the underlying controversy.

In response to questioning from the bench at oral argument, Birch Creek's counsel suggested that the use of the word "permanent" was a drafting error and that the injunction was de facto preliminary because the judge could change it at trial. We disagree. First, we presume that the trial court was aware of the contents of the order it authorized. We will not speculate that the trial judge meant something other than what appears in the order that bears his signature. Second, our review of the transcript of the preliminary injunction hearing reveals that the trial court was largely concerned with assessing damages at trial. There is no indication that the trial court contemplated revisiting the merits of the injunction itself.

For these reasons, we hold that the permanent injunction was improperly granted and order that it be vacated. We reject Birch Creek's speculation that the injunction was actually preliminary and decline to substitute a preliminary injunction of our own making for the order we now vacate. The remaining question is whether any order remains in effect to enjoin the Protheros. The only possible candidate is the original temporary restraining order, the validity of which we now consider.

 As a preliminary matter, we note that had the trial court reached a final judgment granting or denying a permanent injunction, we would dismiss that portion of the appeal challenging the temporary restraining order under the doctrine of merger. *Sterling v. Constantin*, 287 U.S. 378, 386, 53 S.Ct. 190, 191, 77 L.Ed. 375 (1932); *Champlin Refining Co. v. Corporation Comm'n*, 286 U.S. 210, 224, 52 S.Ct. 559, 561, 76 L.Ed. 1062 (1932); *Smith v. Illinois Bell Tel. Co.*, 270 U.S. 587, 588–89, 46 S.Ct. 408, 409, 70 L.Ed. 747 (1925); *Shaffer v. Carter*, 252 U.S. 37, 44, 40 S.Ct. 221, 222, 64 L.Ed. 445 (1920); *Atomic Oil*, 419 F.2d at 1102 n. 9. However, the unusual procedural history of this case militates against application of the merger doctrine. The rule applies when there has been a final adjudication on the merits resulting in a permanent injunction; once that occurs, the temporary or interlocutory order no longer exists, and there can only be an appeal from the final judgment granting the permanent order. *Id.* In this case, however, despite the existence of an order denominated permanent, there has been no final judgment on the merits, and this appeal is interlocutory in nature. Hence, the merger doctrine does not preclude us from reviewing the grant of the temporary restraining order. Moreover, since we have invalidated the permanent injunction, we are bound to consider whether the temporary restraining order should remain in place pending final resolution of this controversy.

 We conclude that granting the temporary restraining order was an abuse of discretion. The order failed to comply with the requirements of rule 65A(b) in two respects.[4] First, the version of the rule applicable at that time mandated that "[e]very temporary restraining order granted without notice ... shall define the injury and state why it is irreparable."[5] Utah R.Civ.P. 65A(b) (1991). The order in question failed to do so. It states only that the order was issued without notice "for the

---

**4.** Rule 65A was substantially revised effective September 1, 1991. However, because the temporary restraining order was granted in June 1991, we apply the language of the rule as it existed prior to the amendments.

**5.** This provision is now located in rule 65A(b)(2).

reason that this Court has determined ... that irreparable injury, loss and damage would be suffered by Plaintiff." Mere conclusory statements will not suffice; we require, as the rule articulates, an explicit and complete definition of the harm and its irreparable nature.[6]

 Second, the order failed to comply with the requirement that if a temporary restraining order is extended, "the reasons for the extension shall be entered of record."[7] Utah R.Civ.P. 65A(b) (1991). In fact, whether the order was ever extended remains in dispute. Birch Creek claims that the order, originally set to expire by its terms on July 8, 1991, was extended by stipulation of the parties. The Protheros, however, contend that they agreed to continue only the hearing on the preliminary injunction motion. The record supports the Protheros' position. Both the signed stipulation for continuance and the resulting court order speak to continuing only the hearing. Neither mentions the temporary restraining order, although Birch Creek's counsel, appearing unopposed, represented to the trial court that the stipulation covered both the hearing date and the restraining order.

In light of these failings, we hold that the temporary restraining order expired by its terms and is therefore no longer in effect. We do not comment on the need for an injunction in this case; our intent is to ensure compliance with the rules governing their issuance.[8] Upon further consideration, the trial court is free to review the merits of granting a preliminary injunction. If such an injunction issues, it should comport with the requirements of the rules. And if a permanent injunction is ordered, it should issue only after a full trial on the merits and not upon a motion for a preliminary injunction.

In conclusion, we vacate the permanent injunction and hold that the temporary restraining order has expired. We refer the case to the trial court for further proceedings consistent with this opinion.

HALL, C.J., HOWE, Associate C.J., and STEWART and ZIMMERMAN, JJ., concur.

---

6. It may well be that the trial judge feared physical violence between the parties, which might have justified a finding of irreparable harm. However, no such finding appears in the record. Under the former rule, it was incumbent upon the trial court to state expressly why the harm was irreparable, and we will not substitute mere speculation about the trial court's concerns when its findings are silent on an essential element.

7. This requirement is now located in rule 65A(b)(2).

8. According to the advisory committee notes to rule 65A explaining the amendments effective September 1, 1991, see supra note 4, subsection (e) was completely revised to implement explicit standards governing preliminary injunctions. It is these standards that should guide the trial court in determining whether a preliminary injunction should issue.