1999 UT App 216

**Daniel A. MILLER and David M. Kimball, Plaintiffs and Appellees,**

v.

**MARTINEAU & COMPANY, CERTIFIED PUBLIC ACCOUNTANTS; Judge Building Associates, a Utah limited partnership; Harold J. Hill; J. Michael Martin; and Wilma W. Gardner, as personal representative of the Estate of Kenneth N. Gardner, Deceased, Defendants and Appellant.**

**No. 980240–CA.**

Court of Appeals of Utah.

July 1, 1999.

need to be reassessed, depending on the outcome    of the proceedings on remand.

Russell G. Workman and Bruce J. Nelson, Nelson Rasmussen & Christensen, Salt Lake City, for Appellant.

Mark R. Gaylord, Ballard Spahr Andrews & Ingersoll, Salt Lake City, for Appellees.

Before Judges BENCH, DAVIS, and ORME.

## OPINION

DAVIS, Judge:

¶ 1 Defendant Martineau & Company (Martineau) appeals the trial court's denial of its (1) Motion to Set Aside Default Judgment, (2) Motion to Dismiss Remaining Causes of Action, and (3) Motion for Preliminary Injunction. We affirm in part and reverse and remand in part.

## FACTS [1]

¶ 2 In March 1986, Judge Building Associates (Associates) purchased certain real property located at 8 East Broadway, Salt Lake City, Utah. The property is commonly known as the Judge Building (the Property). On this same day, Associates executed a Deed of Trust with Assignment of Rents and Leases (1986 Trust Deed) in favor of Republic Savings and Loan Association (Republic) to secure a $2,300,000 note. The 1986 Trust Deed was promptly recorded.

¶ 3 On November 13, 1990, Associates entered into a lease agreement with Martineau, whereby Martineau leased approximately five thousand square feet on the Property's fifth floor. Martineau's lease was negotiated between Associates's general partner, Harold J. Hill, and Martineau's principal, Leland Martineau. The lease terms were so favorable to Martineau that Associates and Martineau had a "gentleman's agreement" not to discuss the terms with the other tenants. Martineau's lease was never recorded with the Salt Lake County Recorder's office, nor was it approved by Republic.

¶ 4 In the fall of 1991, Associates became delinquent on its obligation to Republic and

stopped making payments. In December 1991, Hill told Martineau of Associates's default. In January 1992, Republic filed a complaint against Associates and its principals, Hill and J. Michael Martin, seeking to judicially foreclose the 1986 Trust Deed.

¶ 5 Republic subsequently filed an Amended Complaint, adding Martineau as a party. Upon being served with a copy of the Amended Complaint, Martineau consulted with and was advised by counsel regarding its rights and obligations as a tenant of the Property. Martineau knew its lease interest was inferior, junior, and subordinate to Republic's lien and, in the event of foreclosure, any and all rights and/or interest it had in the Property as a leasehold tenant would be extinguished. Martineau never filed an answer and/or counterclaim to the Amended Complaint.

¶ 6 Because of Martineau's inaction, on March 5, 1993, the trial court entered a Default Judgment against Martineau. The Default Judgment provided, in relevant part:

1. Plaintiff [Republic] is awarded judgment against defendant Martineau & Company, Certified Public Accountants, in accordance with its Amended Complaint to the effect that the lien or interest, if any, of the defendant Martineau & Company, Certified Public Accountants is inferior, junior and subordinate to the lien of plaintiff upon the real property at issue herein . . . .

2. The defendant Martineau & Company is not a judgment debtor in the above-entitled action, is not a creditor having a lien by judgment or mortgage on the Property and is not a successor in interest to any such person or entity, and is not entitled to redeem the Property or any part thereof from any sale of the Property pursuant to Rule 69, Utah Rules of Civil Procedure.

3. Upon any execution sale of the Property pursuant to the order of this Court in the above entitled action[,] any interest or lien claimed by the defendant Martineau &

---

1. Because the trial court's underlying findings of fact remain unchallenged, we primarily recite the facts as entered by the trial court.

Company shall be forthwith extinguished and terminated.

¶ 7 Knowing its interest was inferior, junior, and subordinate to Republic's, Martineau never appealed the Default Judgment.

¶ 8 After the Default Judgment was entered against Martineau, Leland Martineau and plaintiff David M. Kimball had oral conversations regarding the Property. Although these conversations were informal in nature, Mr. Martineau was put on notice that Kimball intended to purchase the property. Mr. Martineau and Kimball also spoke about Mr. Martineau's impressions of the Property and his desire to remain as a tenant.

¶ 9 On March 16, 1993, on Kimball's behalf, Hill submitted a purchase offer to Republic to purchase the Property. This offer was never accepted. Three days later, Republic sent a letter of intent to Leland Martineau, offering to sell the Property to him for $850,000 in cash. Mr. Martineau never accepted this offer.

¶ 10 Finally on May 28, 1993, the Property was sold to plaintiffs here, Daniel A. Miller and David M. Kimball (plaintiffs). On this date, a Real Estate Sale and Purchase Agreement (Purchase Agreement) was executed by Associates, plaintiffs, and Republic, which had been renamed as "TCF Bank Wisconsin" (TCF). Under paragraph 3.4 of the Purchase Agreement, plaintiffs bought the property subject to and conditioned upon "the entry of a final order by the Third Judicial District Court of Salt Lake County, State of Utah, in the foreclosure action commenced by [Republic] and entitled *Republic Capital Bank, F.S.B. v. Judge Building Associates, et al.*" In addition, the parties expressly agreed to preserve and assign to plaintiffs the right to foreclose Martineau's leasehold interest.

¶ 11 On June 18, 1993, TCF executed an Assignment which assigned all TCF's right, title, and interest in the 1986 Trust Deed and the foreclosure action to plaintiffs. Also on June 18, a Subordination Agreement was executed by plaintiffs and TCF, which had agreed to finance plaintiffs' purchase of the Property. The Subordination Agreement prioritized the liens on the Property, and

provided that plaintiffs' "Loan Documents shall unconditionally be and remain at all times a lien or charge upon the Property, prior and superior to the lien or charge of the March 6, 1986 Loan Documents." The Subordination Agreement further provided, "The Foreclosure Action initiated by [TCF] and any foreclosure of the March 6, 1986 Loan Documents shall not operate to diminish, defeat, foreclose or in any way impair the lien of the Purchasers' Loan Documents."

¶ 12 On June 21, 1993, several other transactions took place regarding the Property. First, Associates conveyed the Property to plaintiffs by Special Warranty Deed.

¶ 13 Second, plaintiffs obtained a new loan from TCF, which was secured by a Deed of Trust/Assignment of Rents and Security Agreement. Also part of this new loan package was an Assignment of Leases executed by plaintiffs to TCF.

¶ 14 Third, a letter agreement was executed by both plaintiffs and TCF. This letter agreement specifically stated that it was "executed as part of the loan documents evidencing the loan of TCF ... to [plaintiffs]." The terms in the letter agreement were "considered to be covenants or agreements of the [plaintiffs] under the terms of the Promissory Note, Assignment of Leases, Deed of Trust, Assignment of Rents and Security Agreement, or other documents executed to evidence the ... loan." Paragraph two of the letter agreement provided:

2. Within nine (9) months from date hereof the Borrower shall have either entered into a revised lease with Martineau & Company in a form satisfactory to [TCF] and [plaintiffs] or shall have used its best efforts to complete the foreclosure of the interest of Martineau & Company in the Judge Building property pursuant to the foreclosure action assigned by [TCF] to [plaintiffs]. . . .

¶ 15 Fourth, a Stipulation was entered into among Associates, plaintiffs, and TCF. The relevant portions of this Stipulation provided as follows:

G. In order to implement the terms of the Purchase Agreement [between Associates and plaintiffs], the parties hereto have

agreed to the settlement of certain claims as among them with respect to the matters covered by the Complaint in accordance with the terms of this Stipulation.

. . . .

2. *Substitution of Plaintiff; No Deficiency.* As of the date hereof [TCF] has assigned to [plaintiffs] the cause of action set forth in the Complaint and the underlying note and Trust Deed and the [plaintiffs have] agreed that [plaintiffs'] rights thereunder [are] junior and subordinate to the Trust Deed and other loan documents entered into by [TCF] and [plaintiffs] pursuant to the Purchase Agreement. Accordingly, the parties stipulate that [plaintiffs] may be substituted in the above entitled action as parties plaintiff in place of and as successor to [TCF] as plaintiff *for the sole purpose of completing the foreclosure of any interest Martineau may have in the Property* and on the condition that no deficiency judgment will be sought against . . . Associates. . . .

3. *Completion of Foreclosure;* . . . . The parties acknowledge that [plaintiffs], or their designated assignees, may proceed with the above entitled foreclosure action or proceed with the non-judicial foreclosure of the Trust Deed, provided Hill and Martin are dismissed as party defendants, [and] no deficiency judgment is sought against . . . [Associates], Hill or Martin after any sheriff's sale of the Property. . . .

. . . .

8. *Entire Agreement.* This Stipulation contains the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior agreements and understandings oral or written pertaining to the same. . . .

(Emphasis added.)

¶ 16 On June 22, 1993, the trial court entered an Order Approving Stipulation and Motion Re Partial Settlement, Assignment of Cause of Action, Substitution of Plaintiff and Dismissal of Certain Defendants. In relevant part, the court's order provided the following:

1. The Stipulation is approved.

2. Daniel A. Miller and David M. Kimball are substituted as parties plaintiff in the place of Republic. . . .

3. Daniel A. Miller and David M. Kimball are substituted as parties plaintiff *for the sole purpose of completing the foreclosure of any interest Martineau & Company . . . may have in the property* which is the subject matter of the Complaint. . . .

(Emphasis added.)

¶ 17 On November 1, 1993, the trial court entered a Decree of Foreclosure and a sheriff's sale was noticed and scheduled for November 30, 1993. In the Decree of Foreclosure, the trial court found "that the interest of . . . Martineau & Company [is] subordinate to the interest of plaintiffs, and [this] defendant [is] foreclosed of all right, title, and interest in the subject property."

¶ 18 On November 24, 1993, one week before the sheriff's sale was to occur, Martineau filed a Motion for Temporary Restraining Order seeking to enjoin the foreclosure sale on the Property. At this same time, Martineau filed a Motion to Dismiss Remaining Causes of Action seeking to "dismiss any action pending against Martineau & Company and to cause to be canceled any further proceedings of foreclosure in this matter." Martineau premised its motion "on the grounds and for the reasons that the Trust Deed under which this action was brought has been, by law or in equity, canceled and is no longer effective. Any foreclosure sale arising out of such Trust Deed would be ineffective and invalid."

¶ 19 Although there is no written order in the record, both parties agree that the trial court orally granted Martineau's motion for a temporary retraining order; the sheriff's sale scheduled for November 30, 1993 was therefore canceled. At this time, the parties agreed to suspend any further legal proceedings so they could attempt to settle the matter. Although the parties "agreed to the verbiage of a temporary restraining order," they "waited to submit the order to the court until [they] agreed upon a date for a one-day hearing on the preliminary injunction." By letter, Martineau's counsel stated,

We agreed on the phone that no formal order was necessary for signature by the

court. It is my understanding that we have agreed that the temporary restraining order remains in effect until either (1) the parties agree otherwise, or (2) subsequent order of the court. I have also agreed to hold the $1,000 bond in my trust account inasmuch as the clerk will not accept the funds without a formal court order.[2]

¶ 20 The matter was set for a later date at which time the trial court would determine whether a preliminary injunction should issue, thus further delaying the sale. On October 7, 1994, before a hearing on the motions pending before the trial court was held, Martineau filed a Motion to Set Aside Default Judgment under Utah Rules of Civil Procedure 60(b)(5) and 60(b)(6).[3]

¶ 21 The parties were unable to settle the matter and a hearing was held on Martineau's Motion for Preliminary Injunction, Motion to Dismiss Remaining Causes of Action, and Motion to Set Aside Default Judgment on January 19, 1995. The trial court denied Martineau's motions.

¶ 22 On June 29, 1995, the trial court ruled that plaintiffs were "entitled to recover damages which 'should be the costs and attorneys fees incurred by plaintiffs in defending against the temporary restraining order, and the motion for preliminary injunction.' " The trial court entered a subsequent order awarding plaintiffs their attorney fees in the amount of $20,000.

¶ 23 Martineau appeals both the trial court's denial of its motions, and the trial court's award of attorney fees to plaintiffs.

## ISSUES AND STANDARD OF REVIEW

¶ 24 We must first determine whether the trial court erred in denying Martineau's Motion to Set Aside Default Judgment, Motion for a Preliminary Injunction, and Motion to Dismiss.

¶ 25 "The district court judge is vested with considerable discretion under Rule 60(b) in granting or denying a motion to set aside a [default] judgment." *Katz v. Pierce*, 732 P.2d 92, 93 (Utah 1986). "The court should be generally indulgent toward setting a judgment aside where there is reasonable justification or excuse for the defendant's failure to answer and when timely application is made." *Id.* However, "[t]hat some basis may exist to set aside the default does not require the conclusion that the court abused its discretion in refusing to do so when facts and circumstances support the refusal." *Id.*

¶ 26 "When reviewing a trial court's [denial] of an injunction, we are generally careful not to disturb the ruling unless the court abused its discretion or rendered a decision clearly against the weight of the evidence." *Aquagen Int'l, Inc. v. Calrae Trust*, 972 P.2d 411, 412 (Utah 1998). " 'The trial court's discretion must be exercised consistently with sound equitable principles, "taking into account all the facts and circumstances of the case." ' " *Id.* at 412–13 (quoting *Kasco Servs. Corp. v. Benson*, 831 P.2d 86, 90 (Utah 1992) (quoting *System Concepts, Inc. v. Dixon*, 669 P.2d 421, 425 (Utah 1983))).

¶ 27 "Whether the trial court properly denied [Martineau's] motion to dismiss presents questions of law which we review for correctness, affording no deference to the trial court." *State v. Sterkel*, 933 P.2d 409, 411 (Utah Ct.App.1997).

¶ 28 Martineau also argues that the trial court erroneously awarded plaintiffs their attorney fees. " 'Whether attorney fees are recoverable in an action is a question of law, which is reviewed for correctness.' " *Wardley Corp. v. Welsh*, 962 P.2d 86, 92 (Utah Ct.App.1998) (citation omitted).

## ANALYSIS

¶ 29 Martineau challenges the trial court's denial of its motions on essentially

---

**2.** Utah Rule of Civil Procedure 65A(c) requires a party seeking a temporary restraining order to give some form of security "in such sum and form as the court deems proper." Utah R. Civ. P. 65A(c)(1). "The amount of security shall not establish or limit the amount of costs, including reasonable attorney fees incurred in connection with the restraining order or preliminary injunc-

tion, or damages that may be awarded to a party who is found to have been wrongfully restrained or enjoined." Utah R. Civ. P. 65A(c)(2).

**3.** Rules 60(b)(5) and 60(b)(6) were previously numbered 60(b)(6) and 60(b)(7) respectively. We refer to the current version.

two bases: merger and express contract.[4] We first address Martineau's merger argument.

### Merger

¶ 30 Martineau argues that because plaintiffs acquired legal title to the Property and also acquired TCF's lien, the legal title and existing lien merged into one estate.[5]

> Ordinarily, a transfer of the interest of the mortgagor in mortgaged property to the mortgagee operates as a merger of the two estates, which effects a discharge of the mortgage and satisfaction of the debt, whether the interest transferred by the mortgagor to the mortgagee is a legal title or an equity of redemption.

55 Am.Jur.2d *Mortgages* § 1340 (1996); *accord Mid Kansas Fed. Sav. & Loan Ass'n v. Dynamic Dev. Corp.*, 167 Ariz. 122, 804 P.2d 1310, 1317 (1991) ("[M]erger may occur when a mortgagee's interest and the fee title are owned by the same person."); *Altabet v. Monroe Methodist Church*, 54 Wash.App. 695, 777 P.2d 544, 545 (1989) ("Merger occurs when the fee interest and a charge, such as a deed of trust or a mortgage, vests in the possession of one person."); 59 C.J.S. *Mortgages* § 444 (1998) ("Ordinarily, the purchase or acquisition of the equity of redemption in mortgaged premises by the mortgagee results in a merger of the two estates vesting the mortgagee with the complete title, and putting an end to his rights or title under the mortgage, thus extinguishing the mortgage lien." (footnote omitted)). "However, mergers are presumed only when equity demands." *Federal Land Bank v. Colorado Nat'l Bank*, 786 P.2d 514, 515 (Colo.Ct.App. 1989); *accord Altabet*, 777 P.2d at 545 (" 'Equity does not favor the doctrine of merger . . . .' ") (citation omitted).

¶ 31 There are recognized exceptions to merger:

> "Where a mortgage incumbrancer becomes the owner of the legal title, or of the equity of redemption, a merger will not be held to take place if it be apparent that it was not the intention of the owner, or if, in the absence of any intention, the merger would be against his manifest interest."

*O'Reilly v. McLean*, 84 Utah 551, 37 P.2d 770, 773 (1934) (citation omitted). Thus, " 'if it was the intention to keep the mortgage alive, or if it is to the interest of the mortgagee, and it can be done without prejudice to the rights of the mortgagor or third persons, the doctrine of merger, as between them, will not apply.' " *Id.* (citation omitted).

¶ 32 Additionally, "[t]he doctrine of merger does not apply if there are other intervening encumbrances on the property." *Altabet*, 777 P.2d at 545.

> [I]t is generally held that the acquisition by the mortgagee of the interests of the mortgagor will not, in the absence of a showing of an intention to the contrary, operate as a merger of the mortgage in the fee, where the mortgage is necessary to protect the mortgagee from intervening claims or liens of third persons.

55 Am.Jur.2d *Mortgages* § 1345 (1996); *accord* 59 C.J.S. *Mortgages* § 448 (1998) ("[N]o merger will result from the mortgagee's acquisition of the equity of redemption if the continued existence of the mortgage is necessary to enable the mortgagee to defend his rights against intervening liens of third persons.").

¶ 33 In determining whether the parties intended merger to occur, " '[w]here such intention is not expressed, the court must endeavor to ascertain it by the circumstances connected with the transaction or must indulge in some presumption by which prima facie its existence may be determined.' " *O'Reilly*, 37 P.2d at 773 (citation omitted); *accord* 59 C.J.S. *Mortgages* § 447 (1998) (stating issue of merger is "primarily one of intention"). "The intention of the parties on

---

4. Martineau does not challenge the trial court's findings of fact. Therefore, " ' "we assume[ ] that the record supports the findings of the trial court and proceed[ ] to a review of the accuracy of the lower court's conclusions of law and the application of that law in the case." ' " *Camp-*

bell *v. Box Elder County*, 962 P.2d 806, 808 (Utah Ct.App.1998) (citations omitted).

5. Because Martineau's equitable argument is a variation of its merger argument, we do not address it separately.

the question of merger may be expressly declared, or it may appear from the conduct of the parties, the circumstances of the transaction, and the particular equities of the case. In any event, however, the intention must be clear." 59 C.J.S. *Mortgages* § 447 (1998).

¶ 34 "[T]he intention of the party in whom title unites is a question of fact...." *Federal Land Bank,* 786 P.2d at 515–16; *accord* 59 C.J.S. *Mortgages* § 447 (1998) ("The question whether or not the parties intended that a merger of estates should take place is a question of fact."). Here, the trial court entered two relevant findings of fact that remain unchallenged by Martineau:

> 25.... The purchase of the Property by plaintiffs from Associates was a transaction which the parties did not intend to be a merger of their legal title and their lien on the Property.
>
> 26. Plaintiffs[,] Associates[,] and Republic did not intend the two interests (Associates' title and Republic's lien) to merge. Likewise, plaintiffs (the holders of both the trust deed and the Property) are benefited by keeping the estates distinct.

Thus, because Martineau does not challenge the trial court's pertinent findings, we affirm the trial court's conclusion that the parties did not intend that a merger occur.

¶ 35 Additionally, even if there was no clear intention to prevent merger, we note that merger would not occur under the facts of this case because " 'the merger would be against [plaintiffs'] manifest interest.' " *O'Reilly,* 37 P.2d at 773 (citation omitted); *accord Federal Land Bank,* 786 P.2d at 516; 55 Am.Jur.2d *Mortgages* § 1344 (1996) ("[T]he general rule is that the mortgage is not merged if it is not to the interest of the mortgagee to have it merged."). "[I]t must be presumed that the mortgagee intended to do that which was most advantageous to himself, and if this is that the two estates shall not merge, no merger will take place." 55 Am.Jur.2d *Mortgages* § 1344 (1996). As well stated by plaintiffs, merger would have "the effect of elevating Martineau to a senior position." Clearly, it would be entirely disadvantageous to plaintiffs and/or their predecessor in interest if the two estates merged.

## Plaintiffs' Contractual Obligation to Martineau

¶ 36 Martineau also argues that plaintiffs are contractually bound to honor its lease. Martineau relies on two documents to support its argument. The June 21, 1993 Deed of Trust/Assignment of Rents and Security Agreement executed by plaintiffs in favor of TCF provided that "Borrower [plaintiffs] shall comply with and observe Borrower's obligations as landlord under all leases of the Property or any part thereof." The June 21, 1993 Assignment between plaintiffs and TCF provided that "Assignor [plaintiffs] agrees: (a) to observe and perform all obligations imposed upon the lessor under the Leases." Martineau argues that these provisions create a duty upon plaintiffs to honor a provision in Martineau's lease, which provides in relevant part:

> So long as [Martineau] is not in default under the terms of this Lease, ... this Lease shall remain in full force and effect for the full term hereof and shall not be terminated as a result of any foreclosure (or transfer in lieu thereof) of such mortgage or other security instrument to which [Martineau] has subordinated its rights pursuant to this Subparagraph.

Martineau maintains that these " 'fundamental' lease obligation[s]" require plaintiffs "to allow Martineau to occupy the premises for the time periods and for the rent amounts in the lease."

¶ 37 Because Martineau was not a party to either contract, we assume it is asserting that it is somehow a third-party beneficiary of these contracts. "To have enforceable rights under the ... contracts, [Martineau] had to establish that it was an *intended* beneficiary of one or more of those contracts." *American Towers Owners Ass'n, Inc. v. CCI Mechanical, Inc.,* 930 P.2d 1182, 1188 (Utah 1996). " 'The intent of the contracting parties to confer a separate and distinct benefit must be clear.' " *Id.* (quoting *Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist,* 773 P.2d 1382, 1386 (Utah 1989)). "A third party who benefits only incidentally from the performance of a contract has no right to recover under that contract."

*Broadwater v. Old Republic Sur.*, 854 P.2d 527, 537 (Utah 1993).

■ ¶ 38 The June 1993 Deed of Trust and June 21, 1993 Assignment did not confer a clear, separate, and distinct benefit upon Martineau. Not only is the boilerplate language in these contracts there to protect TCF, as opposed to Martineau, but the June 1993 letter agreement, which was "considered to be covenants or agreements of the [plaintiffs] under the terms of the Promissory Note, Assignment of Leases, Deed of Trust, Assignment of Rents and Security Agreement, or other documents executed to evidence the ... loan," specifically provided that plaintiffs were either going to revise the lease with Martineau or foreclose on Martineau's leasehold interest in the Property. Thus, the parties intended to defeat Martineau's rights as a third party, not to bestow a benefit upon Martineau. Martineau's contractual argument therefore fails.

¶ 39 Because Martineau's merger and contractual arguments fail, we hold that the trial court did not abuse its discretion in denying Martineau's Motion to Set Aside Default Judgment or Motion for Preliminary Injunction. It follows that the trial court correctly denied Martineau's Motion to Dismiss Remaining Causes of Action.[6]

## Attorney Fees

¶ 40 Lastly, Martineau argues the trial court erred in awarding attorney fees to plaintiffs or, in the alternative, erred by awarding an incorrect amount of attorney fees.

■ ¶ 41 Martineau first contends that because the trial court never entered a formal temporary restraining order, nor did the trial court enter on the record reasons for extending the temporary restraining order, plaintiffs are not entitled to attorney fees, or should be limited to the amount plaintiffs incurred within the ten days following the trial court's oral grant of the temporary restraining order. Martineau relies on Rule 65A(b)(2) of the Utah Rules of Civil Procedure to support its argument. Rule 65A(b)(2) provides, in relevant part:

> The order shall expire by its terms within such time after entry, not to exceed ten days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for the extension shall be entered of record.

Utah R. Civ. P. 65A(b)(2). Martineau claims that although the parties stipulated to keeping the temporary restraining order in place until a hearing could be held on the preliminary injunction, because the reasons for the stipulated extension were not entered on the record as required by Rule 65A(b)(2), the temporary retraining order expired by its terms after ten days.

■ ¶ 42 We reject Martineau's argument. Martineau clearly stipulated to and had enjoyed the protection of the extended temporary restraining order.[7] In fact, Mar-

---

**6.** Martineau also complains that the plaintiffs and TCF improperly prioritized the 1993 Trust Deed securing payment of the loan to plaintiffs, thereby increasing the total encumbrances on the Property. Even if Martineau had standing to assert this claim, it has no merit. Martineau does not challenge the regularity of the sheriff's sale nor attempt to show what difference the subordination of the lien being foreclosed made vis-a-vis Martineau.

**7.** It was suggested at oral argument that, by stipulating to the extension of the temporary restraining order, plaintiffs may have waived their right to attorney fees allowed under Rule 65A(c)(2). However, in order to waive a known right, the party must have "an intention to relinquish the right. The intention to relinquish the right may be either expressed or implied and

may be implied from action or inaction." *K & T, Inc. v. Koroulis*, 888 P.2d 623, 629 (Utah 1994). Here, the parties agreed that Martineau would keep the security in place as required by Rule 65A(c)(1). The purpose of the security is to cover damages, including attorney fees, incurred by a wrongfully restrained party. Thus, neither party contemplated that the stipulation included plaintiffs' intentional waiver of their potential right to attorney fees.

Additionally, during the hearing on plaintiffs' request for damages, the trial court asked plaintiffs' counsel whether the stipulation "said anything about damages." Plaintiffs' counsel indicated that it did not, without objection from Martineau's counsel. *See Smoyer Constr. Co. v. Hamrick Supply Co.*, 508 So.2d 958, 959 (La.Ct. App.1987) (holding that because stipulation to dissolve temporary restraining order did not in-

tineau's counsel, by letter to plaintiffs' counsel, stated, "We agreed on the phone that *no formal order was necessary for signature by the court.* It is my understanding that we have agreed that the temporary restraining order remains in effect until either (1) the parties agree otherwise, or (2) subsequent order of the court." (Emphasis added.) Furthermore, the record reflects that Martineau had prepared the necessary order but did not submit it to the court. To hear Martineau complain now of the procedural deficiency "smacks of invited error, which is 'procedurally unjustified and viewed with disfavor.'" *Parsons v. Barnes,* 871 P.2d 516, 520 (Utah 1994) (quoting *State v. Tillman,* 750 P.2d 546, 560–61 (Utah 1987)). "The doctrine of invited error 'prohibits a party from setting up an error at trial and then complaining of it on appeal.'" *State v. Perdue,* 813 P.2d 1201, 1205 (Utah Ct.App.1991) (quoting *State v. Henderson,* 114 Wash.2d 867, 792 P.2d 514, 516 (1990)). Because "'invited error precludes judicial review,'" *id.* (quoting *Henderson,* 792 P.2d at 516), we decline to address this argument further.[8]

¶ 43 Martineau argues next that the trial court failed to distinguish between fees relating to the temporary restraining order and preliminary injunction, and fees incurred defending against the other motions before the court. In its appellate brief, Martineau states, "The preliminary injunction request . . . is the only matter considered by the trial court that arguably falls within the scope of allowable attorney[ ] fees under Rule 65A."

¶ 44 Rule 65A(c)(2) provides that attorney fees "may be awarded to a party who is found to have been wrongfully restrained or enjoined." Utah R. Civ. P. 65A(c)(2). A party is entitled to only those attorney fees incurred because of "the application for, and issuance of, the . . . injunction." *Tholen v. Sandy City,* 849 P.2d 592,

597 (Utah Ct.App.1993). "When attorney fees are incurred in defending against wrongfully obtained injunctive relief and also against an underlying lawsuit, it is appropriate to determine how much of the total fees are attributable to resisting the injunction." *Saunders v. Sharp,* 793 P.2d 927, 933 (Utah Ct.App.1990).

¶ 45 Given that continuation of the temporary restraining order was stipulated to and there were not separate proceedings on a motion for preliminary injunction, it is difficult to see how plaintiffs' attorneys could reasonably have spent the equivalent of a month's work in resisting the injunctive relief wrongfully entered against them. The kind of detailed findings that might explain such a conclusion are wholly lacking in this case. Nor can the several findings that should have been made in calculating an appropriate award of attorney fees, see, e.g., *Dixie State Bank v. Bracken,* 764 P.2d 985, 991 (Utah 1988), be properly implied.

¶ 46 A finding can be implied only when it is irrefutable that the trial court necessarily made a finding that it failed to state. *See, e.g., Selvage v. J.J. Johnson & Assocs.,* 910 P.2d 1252, 1266 (Utah Ct.App. 1996) (stating to imply findings, "there must be clear evidence that the court 'actually considered' and 'necessarily' made its findings") (quoting *Hall v. Hall,* 858 P.2d 1018, 1025 (Utah Ct.App.1993)); *Hall,* 858 P.2d at 1025–26 (discussing limited circumstances in which appellate courts will imply findings and noting "we will not imply any missing finding where there is a 'matrix of possible factual findings'") (quoting *Adams v. Board of Review,* 821 P.2d 1, 6 (Utah Ct.App.1991)). Here the trial court awarded "the surprisingly round sum" of $20,000, *Martindale v. Adams,* 777 P.2d 514, 517 (Utah Ct.App. 1989), but this bottom line is a legal conclusion, the correctness of which depends on

---

clude stipulation to waive right to attorney fees, "defendant still has the right to pursue its claim for attorney fees").

**8.** Martineau cites *Birch Creek Irrigation v. Prothero,* 858 P.2d 990 (Utah 1993), to support its argument that because the reasons for an extension were not entered on the record, the temporary restraining order expired after ten days. However, *Birch Creek* is distinguishable on its

facts. There, the party resisting the temporary restraining order maintained that the parties did not stipulate to extending the order. *See id.* at 995. Here, both parties agreed to extend the temporary restraining order, and Martineau was the proponent, not the opponent, of the temporary restraining order. Accordingly, *Birch Creek* is inapposite.

findings of fact that are simply not there and that are impossible to imply.

¶ 47 It is for this reason that cases remanding conclusory attorney fee awards for the entry of adequate findings are legion,[9] while one looks in vain for a single case in which either Utah appellate court has implied the findings necessary to sustain an award of attorney fees not supported by adequate express findings.[10]

¶ 48 For the foregoing reasons, we remand the case for the entry of adequate findings of fact concerning attorney fees and such reconsideration of the award as may then be proper.

## CONCLUSION

¶ 49 We hold that because the parties did not intend for the Property's legal title and the mortgage lien to merge, and because it would have been against plaintiffs' manifest interest, merger did not occur. We also hold that Martineau has no enforceable rights as a third-party beneficiary to the contracts among plaintiffs and third parties. Thus, the trial court did not abuse its discretion in denying Martineau's Motion to Set Aside Default Judgment or denying Martineau's Motion for Preliminary Injunction. We also conclude the trial court correctly denied Martineau's Motion to Dismiss Remaining Causes of Action.

¶ 50 The trial court's award of attorney fees to plaintiffs is vacated and the matter is remanded for the entry of adequate findings of fact. We reject Martineau's request for attorney fees incurred on appeal. Because plaintiffs are the prevailing party on appeal, and because they were awarded attorney fees below, we grant their request for attorney fees incurred on appeal. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998).

¶ 51 WE CONCUR: RUSSELL W. BENCH, Judge, and GREGORY K. ORME, Judge.

---

9. *See, e.g., Foote v. Clark*, 962 P.2d 52, 56–57 (Utah 1998); *Valcarce v. Fitzgerald*, 961 P.2d 305, 318 (Utah 1998); *Cottonwood Mall Co. v. Sine*, 830 P.2d 266, 269 (Utah 1992); *A.K. & R. Whipple Plumbing & Heating v. Aspen Constr.*, 977 P.2d 518, 365 Utah Adv. Rep. 3, 6–7 (Utah Ct.App.1999); *Selvage v. J.J. Johnson & Assocs.*, 910 P.2d 1252, 1266 (Utah Ct.App.1996); *American Vending Servs. v. Morse*, 881 P.2d 917, 926–27 (Utah Ct.App.1994); *Rappleye v. Rappleye*, 855 P.2d 260, 266 (Utah Ct.App.1993); *Muir v. Muir*, 841 P.2d 736, 742 (Utah Ct.App.1992); *Brown v. Richards*, 840 P.2d 143, 156 (Utah Ct.App.1992); *In re Estate of Quinn*, 830 P.2d 282, 287–89 (Utah Ct.App.1992); *Bell v. Bell*, 810 P.2d 489, 494 (Utah Ct.App.1991).

10. Indeed, this court, in taking liberties in an effort to affirm an inadequately explained award of attorney fees, has itself been reversed by the Utah Supreme Court, with instruction that the case be remanded for further consideration by the trial court. *See Willey v. Willey*, 951 P.2d 226, 233 (Utah 1997).