**2016 UT App 180**

# THE UTAH COURT OF APPEALS

ROSS STENQUIST AND CAROLYN HEATH STENQUIST,
Appellees,
*v.*
JMG HOLDINGS LLC, LAVON MCBRIDE,
AND JEFFREY A. WENGREEN,
Appellants.

Opinion
No. 20150505-CA
Filed August 25, 2016

First District Court, Logan Department
The Honorable Brian G. Cannell
No. 120100556

Brandon J. Baxter, Attorney for Appellants

Ronald G. Russell and Royce B. Covington,
Attorneys for Appellees

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGE
MICHELE M. CHRISTIANSEN and SENIOR JUDGE PAMELA T.
GREENWOOD concurred.[1]

TOOMEY, Judge:

¶1     This appeal concerns the priority of Ross Stenquist and
Carolyn Heath Stenquist's secured interest in real property (the
Property) in Cache County, Utah. We must determine whether
the district court properly granted summary judgment in the
Stenquists' favor when it determined that, as a matter of law,
Lavon McBride's senior trust deed was extinguished when he

---

1. Senior Judge Pamela T. Greenwood sat by special assignment
as authorized by law. *See generally* Utah R. Jud. Admin. 11-
201(6).

accepted title to the Property in lieu of foreclosure. We conclude that it did and therefore affirm.

¶2 The underlying facts of this case are undisputed. Before 2006, Lavon McBride, owner of McBride Construction, owned the Property and developed it into a residential neighborhood. In June 2006, McBride sold and conveyed the Property to Golden Crest Homes, Inc. Golden Crest executed a trust deed in McBride's favor (the McBride Trust Deed), securing the repayment of a $240,000 promissory note (the McBride Note).

¶3 In September 2006, Golden Crest conveyed the Property to JMG Holdings LLC.[2] JMG later executed a trust deed in favor of the Stenquists, securing the repayment of a $300,000 promissory note by June 30, 2008 (the Stenquist Trust Deed and Note). JMG eventually defaulted on its obligations to McBride and the Stenquists.

¶4 In lieu of foreclosure, in January 2011, McBride accepted title to the Property via a quitclaim deed as satisfaction of the McBride Note. Specifically, in a document titled "Estoppel Affidavit," JMG and McBride agreed that "the consideration for said [quitclaim deed] was and is the full cancellation of that certain Note signed by [JMG] to [McBride] secured by that certain [McBride] Trust Deed signed by [JMG] and recorded against the Property."

¶5 In December 2012, the Stenquists filed an action seeking foreclosure of the Stenquist Trust Deed and Note. In their amended complaint, the Stenquists asserted, among other things, that the McBride Trust Deed "had been extinguished . . . by virtue of the Quit Claim Deed." They also contended that any security interest in the Property claimed by McBride was inferior

---

2. Golden Crest and JMG Holdings are owned by some of the same principals.

to their security interest. McBride answered the Stenquists' complaint and filed a counterclaim, arguing that his interest in the Property "has never been subordinated to [the Stenquist Trust Deed]."

¶6 After discovery was completed and a bench trial had been scheduled, the Stenquists filed a motion for summary judgment, arguing that because the "McBride Note was satisfied in full by execution and delivery of the Quitclaim Deeds," the "McBride Trust Deed no longer secures any obligation and it no longer encumbers the Property." "Accordingly," they argued, "[the Stenquists] are entitled to judgment declaring that the McBride Trust Deed no longer encumbers the Property and [any of McBride's security] interests in the Property are junior to [the Stenquist Trust Deed and Note]." Alternatively, the Stenquists argued "[e]ven assuming the McBride Note was not satisfied in full, because of the merger doctrine, the McBride Trust Deed was merged into McBride's fee title ownership of the Property."

¶7 In June 2014, the court granted the Stenquists' summary judgment motion. In its memorandum decision, the court concluded, "These facts, when applied to the law . . . , establish the McBride Trust Deed was extinguished by virtue of JMG's satisfaction of the debt secured by the property in question." Further, it concluded, "As there is no additional debt left payable under the terms of the McBride Note having been fully satisfied, . . . the McBride Trust Deed was extinguished and that [the Stenquist Trust Deed and Note] is superior to any identified claims of [McBride]." Finally, the court determined that, because it "decided this motion based on the issue of satisfaction, it need not address the issues concerning merger."

¶8 McBride then sought to have the district court revise its decision, arguing that JMG's obligation to repay the McBride Note was not the only obligation secured by the McBride Trust Deed. Particularly, McBride argued JMG's "[t]ax obligations,"

"maintenance obligations," and "duty to defend claims against the property [are] ongoing." The court denied McBride's motion, concluding that "nothing therein justifies further modification" of the June 2014 memorandum decision.

¶9 McBride appealed.

ISSUE AND STANDARD OF REVIEW

¶10 The issue on appeal is whether the court erred in granting the Stenquists' summary judgment motion. A district court properly grants a summary judgment motion when "'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *WebBank v. American Gen. Annuity Service Corp.*, 2002 UT 88, ¶ 10, 54 P.3d 1139 (omission in original) (quoting Utah R. Civ. P. 56(c)).[3] "An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness, and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citations and internal quotation marks omitted).

ANALYSIS

¶11 At the heart of McBride's appeal is the assertion that the McBride Trust Deed was not extinguished when the McBride Note was satisfied. Rather, McBride argues, under an exception to the merger doctrine, that its legal and equitable interests in the Property did not merge and that a "trust deed cannot expire automatically if it is against [McBride's] interests." Thus, he asserts, the court "must consider the parties' intent"—a question

---

3. The current version of rule 56(c) is now 56(a).

of fact—"before declaring that a trust deed has been satisfied." Finally, McBride argues that, based on the plain language of the McBride Trust Deed, it contemplated the satisfaction of multiple obligations, not just the satisfaction of the note.

¶12    McBride has not provided any support for the proposition that a trust deed can survive the satisfaction of the note or the debt it secures. Rather, he relies heavily on cases from our appellate courts and courts in other jurisdictions that consider the merger doctrine, which generally provides that whenever a greater interest and a lesser interest in the same property are held by the same person, without an intermediate interest or estate, the lesser interest generally merges into the greater. *See, e.g., O'Reilly v. McLean*, 37 P.2d 770, 773 (Utah 1934); *Miller v. Martineau & Co.*, 1999 UT App 216, ¶ 30, 983 P.2d 1107; *see also, e.g., Federal Land Bank of Wichita v. Colorado Nat'l Bank of Denver*, 786 P.2d 514, 515–16 (Colo. App. 1989); *Altabet v. Monroe Methodist Church*, 777 P.2d 544, 545–46 (Wash. Ct. App. 1989). But, as McBride points out, these cases also demonstrate that "mergers are presumed only when equity demands." *Federal Land Bank of Wichita*, 786 P.2d at 515; *accord O'Reilly*, 37 P.2d at 773; *Miller*, 1999 UT App 216, ¶¶ 32–33. Accordingly, "a merger will not be held to take place if it [is] apparent that it was not the intention of the owner, or if, in the absence of any intention, the merger would be against his manifest interest." *O'Reilly*, 37 P.2d at 773 (citation and internal quotation marks omitted). Thus, McBride argues, under this case law, his legal and equitable interests in the Property did not merge because "the continued existence of the McBride Trust Deed is necessary to allow [McBride] to defend his rights against the [Stenquists] and other possible claimants." Further, although he concedes that he intended to accept the quitclaim deed in full satisfaction of the debt secured by the McBride Trust Deed, he argues he did not intend to extinguish the McBride Trust Deed.

¶13   McBride's argument misses the mark. It conflates two related yet distinct principles: (1) merger and (2) satisfaction of the obligation(s) secured by a trust deed. Oddly, he argues that the merger doctrine applies only insofar as an exception to the doctrine prevents his interests from merging. But under his theory there would be neither a security interest to merge, nor an interest to defend against a junior lien, if his security interest were extinguished when the McBride Note was satisfied. We must therefore determine as a matter of law whether McBride's Trust Deed was extinguished when the McBride Note was satisfied.

¶14   "'Trust deed' means a deed . . . conveying real property to a trustee in trust to secure the performance of an obligation of the trustor or other person named in the deed to a beneficiary." Utah Code Ann. § 57-1-19(3) (LexisNexis 2010); *see also Deed of Trust*, Black's Law Dictionary (9th ed. 2009) ("A deed conveying title to real property to a trustee as security until the grantor repays a loan. This type of deed resembles a mortgage."). "All right, title, interest and claim in and to the trust property acquired by the trustor, or the trustor's successors in interest . . . shall inure to the trustee as security for the obligation or obligations for which the trust property is conveyed as if acquired before execution of the trust deed." Utah Code Ann. § 57-1-20 (LexisNexis 2010). By the statute's plain language, a trust deed can secure one or more obligations from the trustor. *See id.* If the trustor "breach[es] an obligation for which the trust property is conveyed as security," "at the option of the beneficiary, a trust deed may be foreclosed." *Id.* § 57-1-23.

¶15   "The general rule is that payment of the secured debt extinguishes the lien of the mortgage or deed of trust by itself and instantaneously." 55 Am. Jur. 2d *Mortgages* § 318 (2016); *see also Jones v. Sturgis*, 199 P.2d 645, 646–47 (Colo. 1948) (concluding that "the deed of trust securing [repayment of a loan] ceased to be a lien on the property" when the note "was in fact fully

satisfied" even though the parties agreed to satisfy the note for less than the amount the note indicated). In other words, when the obligations secured by a trust deed are satisfied, the beneficiary "no longer has a legitimate interest in the security." *See Hector, Inc. v. United Sav. & Loan Ass'n*, 741 P.2d 542, 545 (Utah 1987); *see also JP Morgan Chase Bank, NA v. Wright*, 2015 UT App 301, ¶ 14, 365 P.3d 708; 55 Am. Jur. 2d *Mortgages* § 318 (2016). Further, "[i]n the case of a payment and discharge of a first mortgage, the next encumbrance junior thereto becomes by operation of law a first lien on the property." 55 Am. Jur. 2d *Mortgages* § 323 (2016).

¶16    Because the McBride Note secured by the McBride Trust Deed was undisputedly cancelled or satisfied when McBride accepted the quitclaim deed in lieu of foreclosure, we must then construe the trust deed and the estoppel affidavit to determine as a matter of law whether all obligations secured by the McBride Trust Deed were satisfied.

¶17    In construing an agreement or contract, "[w]e look to the writing itself to ascertain the parties' intentions, and we consider each contract provision . . . in relation to all of the others, with a view toward giving effect to all and ignoring none." *WebBank v. American Gen. Annuity Service Corp.*, 2002 UT 88, ¶ 18, 54 P.3d 1139 (alteration and omission in original) (citation and internal quotation marks omitted).

¶18    The McBride Trust Deed describes the Property and states that the deed is

> FOR THE PURPOSE OF SECURING (1) payment of the indebtedness evidenced by [the McBride Note], in the principal sum of $240,000.00 made by Trustor, payable to the order of Beneficiary at the times, in the manner and with interest as therein set forth, and any extensions and/or renewals or modifications thereof; (2) the

performance of each agreement of Trustor herein contained; (3) the payment of such additional loans or advances as hereafter may be made to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Trust Deed; and (4) the payment of all sums extended or advanced by Beneficiary under or pursuant to the terms hereof, together with interest thereon as herein provided.

To protect the security of the trust deed, the McBride Trust Deed also secured the performance of other ancillary obligations, including the following:

TO PROTECT THE SECURITY OF THIS TRUST DEED, TRUSTOR AGREES:

1. To keep said property in good condition and repair, not remove or demolish any building thereon, to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon; to comply with all laws, covenants and restrictions affecting said property; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to do all other acts which from the character or use of said property may be reasonably necessary; the specific enumerations herein not excluding the general; and, if the loan secured hereby or any part thereof is being obtained for the purpose of financing construction of improvements on said property.

Trustee, upon presentation to it of an affidavit, signed by Beneficiary, setting forth facts showing a default by Trustor under this numbered

paragraph, is authorized to accept as true and conclusive all facts and statements therein, and to act thereon hereunder.

2. To provide and maintain insurance, of such type or types and amounts as Beneficiary may require, on the improvements now existing or hereafter erected or placed on said property. . . .

3. To deliver to, pay for and maintain with Beneficiary *until the indebtedness secured hereby is paid in full*, such evidence of title as Beneficiary may require, including abstracts of title or policies of title insurance and any extensions or renewals thereof or supplements thereto.

4. To appear in and defend any action or proceeding purporting to affect the security hereof, the title to said property, or the rights or powers of Beneficiary or Trustee; and should Beneficiary or Trustee elect to also appear in or defend any such action or proceeding, to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum incurred by Beneficiary or Trustee.

5. To pay at least 10 days before delinquency all taxes and assessments affecting said property, including all assessments upon water company stock and all rents, assessments and charges for water, appurtenant to or used in connection with said property; to pay, when due, all encumbrances, charges and liens with interest, on said property or any part thereof, which at any time appear to be prior or superior hereto; to pay all costs, fees, and expenses of this Trust.

6. Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: Make or do the same in such manner and to such extent *as either may deem necessary to protect the security hereof*, Beneficiary or Trustee being authorized to enter upon said property for such purposes; commence, appear in and defend any action or proceeding purporting to affect the security hereof or the rights of powers of Beneficiary or Trustee; pay, purchase, contest, or compromise any encumbrance, change or lien which the judgment of either appears to be prior or superior hereto; and in exercising any such powers, incur any liability, expend whatever amounts in its absolute discretion it may deem necessary therefor, including cost of evidence of title, employ counsel, and pay his reasonable fees.

7. To pay immediately and without demand all sums expended hereunder by Beneficiary or Trustee, with interest from date of expenditure at the rate of ten percent (10.0%) per annum until paid, and the repayment thereof shall be secured hereby.

(Emphases added.)

¶19 By the deed's plain language, it secured four obligations. Specifically, it secured the repayment of the McBride Note, the performance of each agreement contained in the deed, repayment of any additional notes connected to this specific deed, and payment of all sums expended or advanced by McBride as required by any terms of this deed.

¶20    By McBride's own account, the McBride Note was satisfied or "fully cancel[ed]" when it accepted the quitclaim deed to the Property in lieu of foreclosure. In relevant part, the estoppel affidavit specifically states,

> That aforesaid Quit Claim Deed is intended to be and is an absolute conveyance of all interest that [JMG] has in said premises to [McBride], and is not intended as a mortgage, trust conveyance, or security of any kind. It is the intention of the Affiant as agent for [JMG] in said [Quit Claim] Deed to convey all [JMG's] right, title and interest in and to said premises to [McBride]. [JMG] has received valuable consideration for this conveyance.

> That the consideration for said [Quit Claim] Deed was and is the full cancellation of that certain [McBride] Note signed by [JMG] to [McBride] secured by that certain [McBride] Trust Deed signed by [JMG] and recorded against the Property on June 14, 2006.

Essentially, in exchange for the "full cancellation" of the McBride Note, JMG conveyed all rights, obligations, and interests to the Property to McBride. Thus, the exchange of the Property's title satisfied the first obligation secured by the McBride Trust Deed. But McBride has not provided evidence that there were any other notes (other than the McBride Note) associated with the McBride Trust Deed nor any other debts expended under the terms of this deed. Thus, the third and fourth obligations were merely hypothetical or contingent on McBride incurring additional expenses under the terms of the deed.

¶21    Nevertheless, McBride asserts the second obligation secured by the McBride Trust Deed—the Trustor's agreement to

protect the security—remains to be satisfied, and this unfulfilled obligation keeps the deed alive. We are not convinced.

¶22    Based on the nature of a trust deed and the plain language of the McBride Trust Deed and Note, the principal obligation secured by the McBride Trust Deed was the repayment of the $240,000 loan. *See Deed of Trust*, Black's Law Dictionary (9th ed. 2009); *see also DiMeo v. Nupetco Assocs., LLC*, 2013 UT App 188, ¶ 7, 309 P.3d 251 (explaining that "[a] trust deed secures the obligations due under a note by transferring a security interest in real property to a trustee to be held until the debt is repaid"). In the western states, it has been held that where "the parties intended that . . . a pre-existing indebtedness should be extinguished by [a] conveyance, no mortgage can exist." *Merryweather v. Pendleton*, 372 P.2d 335, 339 (Ariz. 1962). Thus, contrary to McBride's arguments, a trust deed, like a mortgage, cannot exist without the debt. *See, e.g., Merryweather v. Pendleton*, 367 P.2d 251, 254 (Ariz. 1961) ("The very essence of a mortgage is a subsisting obligation to pay. It matters not whether the debt existed before or was created by the transaction in question. But debt there must be."); *Hill v. Favour*, 84 P.2d 575, 578 (Ariz. 1938) ("The law seems to be well settled that the mortgage is a mere incident to the debt and that its transfer or assignment does not transfer or assign the debt or the note. The mortgage goes with the note. If the latter is transferred or assigned, the mortgage automatically goes along with the assignment or transfer."); *First Nat'l Bank of Saco v. Vagg*, 212 P. 509, 511 (Mont. 1922) ("The mortgage, being a mere incident of the debt, cannot be assigned separately from it, so as to give any beneficial interest."). Accordingly, the trust deed, although independent of the debt, is only a mere incident—a security—to the note. *See Vagg*, 212 P. at 511. "[T]he mortgage alone, without the debt, is nugatory, and confers no rights whatever." *Id.* Thus, "[t]he mortgage can have no separate existence. When the note is paid, the mortgage expires. It cannot survive for a moment

[without] the debt which the note represents." *Id.* Without the debt obligations, a trust deed is a mere nullity.

¶23 We agree with McBride that a trust deed may secure more than one obligation, but in this case the McBride Trust Deed did not. We cannot agree that the deed's ancillary obligations remained in place to protect some hypothetical security interest from substantial depreciation after the primary obligation—repayment of the McBride Note—was satisfied. Thus, McBride's legal and equitable interests did not merge; rather his security interest simply did not exist after the McBride Note was satisfied. Furthermore, whether satisfaction of the McBride Note fulfilled the obligations the McBride Trust Deed secured is a question of law—extinguishment or the release of a trust deed is the legal consequence of satisfaction or performance of the primary obligations secured by that trust deed. So, although McBride did not intend to extinguish the McBride Trust Deed, his intent is not relevant to determine whether satisfaction of the McBride Note did indeed extinguish the McBride Trust Deed. When read together, the McBride Trust Deed, the McBride Note, and the estoppel affidavit make clear that the primary obligation the McBride Trust Deed secured was the repayment of the McBride Note. All other obligations were contingent upon McBride paying the debt or were ancillary to the repayment of the Note, existing only to protect the security during the period of repayment. Consequently, when the McBride Note was fully cancelled, the ancillary obligations evaporated along with the security interest they protected.

CONCLUSION

¶24 In sum, McBride has not demonstrated that the district court erred when it granted the Stenquists' summary judgment motion and determined that the McBride Trust Deed was extinguished when McBride accepted title to the Property in exchange for full cancellation of the McBride Note. The ancillary

obligations inherent in a trust deed cannot survive the satisfaction of the note because the beneficiary no longer has a legitimate interest in the security once the debt or loan has been repaid. Finally, McBride has not demonstrated that there is a dispute in fact that would prevent summary judgment; the release or extinguishment of the trust deed is the legal consequence of satisfaction of the note. We therefore affirm.

––––––––––