Clifford (Rusty) ANDERSON, dba
Image Limousine, Petitioner,

v.

PUBLIC SERVICE COMMISSION
OF UTAH, Respondent.

No. 910166.

Supreme Court of Utah.

July 1, 1992.

Joseph N. Nemelka, Murray, for Anderson.

R. Paul Van Dam, David L. Stott, Salt Lake City, for Public Service Com'n.

DURHAM, Justice:

Petitioner Clifford Anderson (dba Image Limousine) is an authorized common carrier of passengers for hire. He seeks review of a Public Service Commission order revoking his certificate of convenience and necessity. Anderson challenges the Commission's order on the grounds that (1) the Commission failed to comply with the notice and hearing requirements of Utah Code Ann. § 54–6–41, (2) the Commission acted in an arbitrary and capricious manner in cancelling Anderson's certificate, and (3) the Commission is estopped from revoking Anderson's certificate. We reject all of petitioner's contentions and affirm the Commission's order.

## I. FACTS AND PROCEDURAL HISTORY

Anderson has a fairly long history of appearances before the Public Service Commission. His most recent violation, for which the Commission subsequently revoked his certificate, involved a failure to maintain on file with the Commission proof of insurance coverage, as required by Utah Code Ann. § 54–6–42. In August 1990, Image allowed its insurance to lapse for twelve days. On October 18, 1990, an administrative law judge conducted a hearing in which Anderson was required to show cause why Image "should not be subjected to sanctions and/or the suspension or cancellation of its Certificate of Convenience and Necessity" for its insurance lapse. At the conclusion of the hearing, the administrative law judge recommended that Anderson be fined $500 for the insurance violation but that the fine be suspended on the condition that Anderson pay a suspended portion of a previously imposed fine within 180 days and that Anderson complete a two-year probation without further violation. The Commission reviewed the administrative law judge's proposed order but found the penalty inadequate in light of Anderson's history of violations. Consequently, on November 9, 1990, the Commission overruled the administrative law judge's proposed order. Instead, the Commission ordered Anderson to "pay the $500.00 fine within 60 days of the date of this order or his Certificate of Convenience and Necessity will be cancelled *without further notice.*"

The Commission sent a copy of the November 9 order by certified mail to the address Anderson had designated as that at which service of process may be made and orders may be delivered. *See* Utah Code Ann. § 54–6–14 (1990). The mail carrier made several attempts to deliver the order, but Anderson failed to claim his mail. Consequently, the post office returned the order to the Commission unclaimed. Anderson did not pay the $500 fine by January 9, and on February 7, 1991, the Commission issued an order revoking Image's certificate of convenience and necessity. The Commission, again by certified mail, sent Anderson a copy of the order of revocation. It too was returned unclaimed.

On March 14, 1991, after the expiration of the statutory review period, Anderson petitioned the Commission for a rehearing of the cancellation order. The Commission denied the petition. Anderson subsequently filed a petition for a writ of review with this court.

# 824

## II. STANDARD OF REVIEW

Subsection 63–46b–16(4) of the Utah Administrative Procedures Act ("UAPA") outlines the circumstances under which a reviewing court may grant relief from formal agency action. Under 63–46b–16(4)(d), we may grant relief if "the agency has erroneously interpreted or applied the law." Anderson's allegation that the Commission failed to comply with the notice and hearing requirements of section 54–6–41 falls under this rubric. Under UAPA, as in other contexts, when reviewing an application or interpretation of law we use a correction of error standard, giving no deference to the Commission's interpretation of the law. *See Savage Indus. v. State Tax Comm'n,* 811 P.2d 664, 669–70 (Utah 1991). *But see Morton Int'l v. Auditing Div. of the Utah State Tax Comm'n,* 814 P.2d 581, 587 (Utah 1991) (if agency has been granted discretion in interpreting specific term, we review agency's interpretation/application under reasonableness standard). Anderson's second claim, that the Commission acted in an arbitrary and capricious manner when it revised the administrative law judge's proposed order, is reviewable under subsection 63–46b–16(4)(h)(iv). We review claims that an agency action was arbitrary and capricious for reasonableness. *See Sisco Hilte v. Industrial Comm'n,* 766 P.2d 1089, 1091 (Utah Ct. App.1988).

## III. NOTICE AND HEARING

Anderson contends that the Commission failed to comply with the notice and hearing requirements of Utah Code Ann. § 54–6–41, thereby depriving him of due process in the revocation of his license.[1] Section 54–6–41 states, "The commission may at any time for good cause, and after notice and hearing, suspend, alter, amend, or revoke any certificate, permit, or license issued by it under this chapter." Utah Code

Ann. § 54–6–41 (1990). Although Anderson admits he was afforded a hearing on the matter that led to the revocation of his certificate, he argues that this hearing and the subsequent notices the Commission sent him regarding the future status of his license were insufficient to comport with the due process standards inherent in section 54–6–41.

We first address Anderson's contentions that the Commission did not conduct sufficient hearings before cancelling Anderson's certificate. Anderson points out that in the October 18, 1990 hearing, the administrative law judge focused only on Anderson's failure to maintain insurance coverage and not on whether his license should be revoked. Anderson argues that after the Commission amended the administrative law judge's recommended order and before it revoked his certificate, the Commission should have conducted another hearing directly addressing whether his certificate should be revoked.[2] His argument is meritless.

■ After Anderson allowed his insurance to lapse, the Commission sent him an order to show cause ("OSC") requiring him to "appear before the Commission and show cause why [Image's] Certificate of Convenience and Necessity ... should not be suspended or cancelled...." The notice provided to Anderson advising him of the OSC hearing unambiguously informed him that the purpose of the hearing was to determine why his certificate should not be revoked. An administrative law judge conducted a hearing on the OSC at which Anderson appeared and defended his position. Such a hearing, focusing on the violation for which a license is later suspended and the notice which informs the parties of the nature of the potential penalty involved, clearly comports with the hearing requirement set forth in section 54–6–41.

---

1. The parties did not brief or argue this case under article I, § 7 of the Utah Constitution. Therefore, we do not analyze § 54–6–41 under the State's due process clause.

2. In his brief, however, Anderson acknowledges that due process does not "necessarily require a

hearing at any particular point in the administrative proceeding as long as the requisite hearing is held before the final order becomes effective." *Vali Convalescent & Care Inst. v. Industrial Comm'n,* 649 P.2d 33, 36 (Utah 1982).

■ Anderson further alleges that the Commission gave him insufficient notice of its modifications of the administrative law judge's proposed order. He contends that when the Commission received his returned order, it had a duty to take additional steps to ensure that he got actual notice of the amended order (i.e., the order that required him to pay the full $500 penalty within 60 days or have his certificate revoked automatically).

This argument is unpersuasive. Section 54–6–14 of the Motor Carrier Act mandates that all common and contract motor carriers maintain on file with the Commission "written designation of the name and post office address of a person maintaining a residence within this state upon whom service of any process, notice, or order may be made under this chapter." Utah Code Ann. § 54–6–14 (1990). The statute further provides, "Service of process shall be by certified mail to the designated person at the address filed." *Id.* The statute makes no reference to any sort of personal service or actual notice requirement. The most burdensome form of service articulated is certified mail. Thus, we can infer that, at most, the legislature intended that the Commission be obligated to serve its orders by certified mail, not by personal service.

■ Despite the statute's apparent approval of serving orders by certified mail, Anderson argues that he is constitutionally entitled to actual notice of Commission orders. We do not believe that the Constitution requires actual notice under these circumstances.

In *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313–14, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950), the United States Supreme Court held that to comport with due process, notice must be "reasonably calculated under all the circumstances" to give interested parties an opportunity to protect their interests. Under this standard, the proper inquiry focuses on whether the agency "acted reasonably in selecting means likely to inform persons affected, not whether each [affected person] actually received notice." *Weigner v.*

*City of New York,* 852 F.2d 646, 649 (2d Cir.1988). To determine whether the agency has acted reasonably in choosing a method of notice, we balance the interest sought to be protected against the interest of the agency. *Tulsa Professional Collection Servs. Inc. v. Pope,* 485 U.S. 478, 484, 108 S.Ct. 1340, 1344, 99 L.Ed.2d 565 (1988); *Carlson v. Bos,* 740 P.2d 1269, 1273–74 (Utah 1987). In undertaking this analysis, we focus on whether the method of service strikes a reasonable balance between the interests of the agency and the affected individual, *see Tulsa,* 485 U.S. at 484, 108 S.Ct. at 1344, while keeping in mind that the state's burden is less onerous in administrative proceedings. *See Worrall v. Ogden City Fire Dep't,* 616 P.2d 598, 602 (Utah 1980) (Hall, J., dissenting) ("[T]he sufficiency of 'notice' for due process purposes is more limited in administrative matters than in other areas of the law.").

In the instant case, Anderson's interest lies in a certificate of convenience and necessity for operating a limousine service. It appears that the limousine service is Anderson's source of livelihood. As such, it represents a significant interest. On the other hand, the agency has an interest in controlling the level of its administrative burden in delivering orders to parties. The current practice of delivering orders via certified mail does not place an undue burden on the Commission. Unlike personal service, which would require substantial time and expense, certified mail is far less costly and less personnel-intensive; nevertheless, it is a reliable method of notice. *See, e.g., Grannis v. Ordean,* 234 U.S. 385, 397–98, 34 S.Ct. 779, 784, 58 L.Ed. 1363 (1914) (commenting on skill of postal workers in effecting delivery); *Hoffman v. National Equip. Rental, Ltd.,* 643 F.2d 987, 990 (4th Cir.1981) (presuming notice-bearing letters reach destination).

■ Furthermore, the nature and purpose of the relationship between certificate holders and the Commission support the adequacy of this type of notice. When the Commission grants a certificate of convenience and necessity, it gives an individual the authority to operate in a designated

business (e.g., common carriers). This certificate does not represent an unrestricted right. Rather, the Commission may impose reasonable conditions with which the certificate holder must comply in return for the privilege of retaining the certificate. *See, e.g.,* 73B C.J.S. *Public Utilities* § 69, at 328–29 (1983) ("[C]ommission may, in the public interest ... annex reasonable conditions or limitations to the certificate of convenience and necessity."); 53 C.J.S. *Licenses* § 41, at 383 (1987) (holder must comply with conditions imposed to be entitled to license); 51 Am.Jur.2d *Licenses and Permits* § 45, at 52 (1970) ("[C]ontinuance of license privileges may require the satisfaction of certain requirements."). The Commission regulates and supervises the certificate holder to ensure that the holder is in compliance with the conditions of his or her certificate. This regulatory function requires ongoing communication between the Commission and certificate holders; it is entirely reasonable to require certificate holders to make themselves available to receive regular communications. Thus, the ongoing nature of the relationship with certificate holders suggests that the Commission's burden in effecting notice is somewhat less onerous in this context than it might be outside the regulatory setting.

■ In addition, the agency also has a significant interest in ensuring that parties do not delay or subvert the administrative process by willfully evading notice. If an actual notice standard were required for delivery of Commission orders, parties might be encouraged to evade notice. A party fearing an adverse outcome could simply refuse to claim his or her mail and then avoid personal service. Such a result would be unacceptable. Although some individuals may fail to receive notice through no fault of their own, it would be extremely burdensome to require the Commission to undertake factual determinations of willfulness and fault in every failure to receive notice.

The legislature appears to have recognized the risk of willful evasion. Consequently, it has placed the bulk of the burden of ensuring notice on the certificate holders. Section 54–6–14 of the Motor Carrier Act provides, "Every common and contract motor carrier shall file with the commission a written designation of the name and post office address of a person maintaining a residence within this state upon whom service of any process, notice, or order may be made." Utah Code Ann. § 54–6–14 (1990). This requirement of maintaining a current address on file with the Commission, with the implicit corollary of making a diligent effort to collect mail sent to that address, is a reasonable burden on the benefit of holding a certificate of convenience and necessity.

This is particularly true for notice involving orders. Orders generally are sent after the party has been involved in some proceeding before the Commission or administrative law judge. Thus, the party is aware that actions are or may be pending. The party is aware that communications from the Commission likely will ensue, and therefore, the party should be diligent in retrieving any correspondence from the Commission.

Given the potential administrative burden and the risk of willful evasion inherent in an actual notice standard, we believe that the use of certified mail to deliver Commission orders strikes a proper balance between the interests of the certificate holder and the interests of the agency. Although certified mail will not ensure actual notice in all cases, it is a method reasonably calculated to inform certificate holders of Commission orders.

## IV. ARBITRARY AND CAPRICIOUS CONDUCT

■ Anderson contends that the Commission acted in an arbitrary and capricious manner by amending the administrative law judge's recommended order. He argues that because the Commission members were not present at the hearing and thus could not observe Anderson's demeanor, they did not have a sufficient basis for amending the administrative law judge's recommendations. We disagree. The Commission, after reviewing the record and considering Anderson's history of vio-

lations, concluded that the full $500 fine was warranted and that if it was not paid within 60 days, his certificate would be revoked. The Commission's penalty was well within the range of penalties allowed under section 54–6a–4(1). In fact, a $500 penalty is at the low end of the permissible scale. Considering Anderson's long history of violations, it was reasonable for the Commission to impose a stiffer penalty than the administrative law judge recommended. Thus, we hold that the Commission's action was neither arbitrary nor capricious.

## V. ESTOPPEL

 Finally, Anderson contends that the Commission should be estopped from revoking his certificate because he had entered into an alleged settlement agreement with an assistant attorney general. In December 1990, the attorney general's office instituted legal proceedings against Anderson for failure to pay the fine on his prior violation (Docket No. 90–841–01). Subsequently, Anderson and an assistant attorney general, Mr. Tanner, began negotiations to settle all the fines Anderson owed.[3] Neither the parties nor the record indicates the exact nature of these negotiations. It does appear, however, that while the negotiations were in progress, the Commission revoked Anderson's certificate.

Anderson argues that certain representations were made during the course of the negotiations that should estop the Commission from revoking his certificate. Anderson rests his claim on a letter his attorney sent to Mr. Tanner on February 19, 1991, stating, "It is my understanding from our previous telephone conversations that if [my client] pays another $250.00 on or before May 9, 1991, then all of the matters currently pending will be resolved." He makes no further allegations of specific representations made to him. Anderson's estoppel claim fails because it does not meet the high standard of proof required for estoppel against the government.

As a general rule, estoppel may not be invoked against a governmental entity. *Utah State Univ. v. Sutro & Co.*, 646 P.2d 715, 718 (Utah 1982). In Utah, there is a limited exception to this general principle for "unusual circumstances 'where it is plain that the interests of justice so require.'" *Eldredge v. Utah State Retirement Bd.*, 795 P.2d 671, 675 (Utah Ct.App. 1990) (quoting *Sutro & Co.*, 646 P.2d at 720). This exception applies, however, only if "the facts may be found with such certainty, and the injustice suffered is of sufficient gravity, to invoke the exception." *Sutro & Co.*, 646 P.2d at 720.

The few cases in which Utah courts have permitted estoppel against the government have involved very specific written representations by authorized government entities. For example, in *Celebrity Club, Inc. v. Utah Liquor Control Commission*, 602 P.2d 689 (Utah 1979), an applicant for a liquor license inquired whether its proposed location would comply with a statutory requirement that it not be located within "600 feet of any public or private school, church, library, public playground or park...." Utah Code Ann. § 16–6–13.5 (repealed 1985). The Liquor Control Commission responded with a written representation that "the location of the proposed liquor store in your proposed private club facility satisfies the 600 foot requirement." *Celebrity Club, Inc.*, 602 P.2d at 691. In reliance on this explicit representation, the applicant expended roughly $200,000 to complete the club. In a subsequent dispute over the issuance of the license, the court held that the Commission was estopped from denying the license for violation of the statute.

Similarly, in *Eldredge v. Utah State Retirement Bd.*, 795 P.2d 671 (Utah Ct.App. 1990), a representative of the Utah State Retirement Office assured a county employee that he would receive credit toward retirement for over six years of service he had accrued prior to a temporary break in his employment with the county. Representatives of the retirement office made oral and written statements assuring El-

---

**3.** Although it is unclear from the record, it appears that by this time, Anderson had learned of the Commission's amendment of the administrative law judge's proposed order.

dredge that he would be credited with the years in question. *Eldredge*, 795 P.2d at 672–73. Relying on these explicit representations, Eldredge chose to participate in an early retirement option. The court held that the county was later estopped from denying Eldredge credit for the improperly credited years. *Id.* at 678.

These cases involved very clear, well-substantiated representations by government entities. There was no such representation here. All we have is Anderson's claim, in his own attorney's letter, that some sort of agreement may have been reached. Anderson points to no specific statement or written representation made by either the Commission or Mr. Tanner that could rise to the standard required under *Sutro & Co.* Consequently, his estoppel claim fails.

Anderson has not demonstrated that the Commission failed to comply with the notice and hearing requirements of section 54-6-41, that the Commission's action was arbitrary or capricious, or that the Commission should be estopped from revoking his certificate. Thus, we affirm the Commission's revocation of Anderson's certificate.

HALL, C.J., HOWE, Associate C.J., and STEWART and ZIMMERMAN, JJ., concur.