991 P.2d 607 (1999)
1999 Utah Ct. App. 330
BLACK'S TITLE, INC.; Ronald G. Black; and Kathi Black, Petitioners,
v.
UTAH STATE INSURANCE DEPARTMENT, Respondent.
No. 981479-CA.
Court of Appeals of Utah.
November 12, 1999.
*609 Kim R. Wilson, David L. Pinkston, Snow Christensen & Martineau, Salt Lake City, for Petitioners.
Jan Graham, Attorney General, Bryce H. Pettey, Assistant Attorney General, Salt Lake City, for Respondent.
Before WILKINS, P.J., GREENWOOD, Associate P.J., and DAVIS, J.

OPINION
DAVIS, Judge:
¶ 1 Petitioner Ronald G. Black seeks review of the Utah State Insurance Commissioner's (Commissioner) order denying his motion under Rule 60(b), Utah Rules of Civil Procedure, to set aside the default judgment revoking Black's insurance license. Because we conclude the Commissioner acted within his discretion, we deny Black's requested relief.

BACKGROUND
¶ 2 Black's Title, Inc. (Black's Title), a title insurance corporation located in Bountiful, Utah, was co-owned by Black, who also served as president, and his wife, Kathi Black, who served as vice president. Both were licensed title insurance agents and designated agents of Black's Title. Because Black was under a doctor's care and unable to work, during the fall of 1997 and thereafter, Kathi managed Black's Title. While suffering from ill health, Black resided away from his Bountiful home in another county and visited Black's Title on only a few occasions, each for only a few minutes. During this time, Kathi informed Black that the Utah State Insurance Department (Department) was investigating her, Black's Title, and Black, that Kathi was attempting to resolve any issues, and to that end she had retained an attorney, Mr. Diumenti. At some point, Black met with Diumenti to discuss the possible sale of Black's Title to another company.
¶ 3 On October 9, 1997, the Department initiated an adjudicative proceeding and mailed via certified mail a notice and copy of the complaint to Black, Kathi, and Black's Title at the business address on file with the Department. The mailing certificate indicates receipt at that address on October 10, 1997. The Department also mailed copies to Diumenti and to both Black and Kathi at their residential address on file with the Department. Notwithstanding these efforts by the Department to inform Black of the adjudicative proceeding, Black asserts he never received or saw the notice or complaint until after expiration of the thirty-day period in which he could respond.
¶ 4 Having received no response from Black, on November 12, 1997, the Department entered Black's default and revoked his insurance license. The following February, Black filed an answer to the complaint and moved to set aside the default and order *610 under Rules 55 and 60(b), Utah Rules of Civil Procedure. The motion was denied by the Department and Black sought agency review, arguing the default should be set aside under Rule 60(b)(1) and (6).[1] The Commissioner likewise refused to set aside the default on agency review. The Commissioner found that Black had knowledge that the Department had begun an investigation and that Kathi had retained Diumenti, but that Black took no action. The Commissioner further found, among other things, that although Black claimed to be under the care of a doctor and unable to work, he failed to "state the medical condition or reasons why he could not work or why it would prevent him from communicating with [Diumenti] by telephone or in person." The Commissioner concluded Black did not exercise due diligence, that "[h]is actions constitute[d] a failure to diligently defend and therefore his conduct and the failure of his attorney to respond on his behalf [wa]s not to be excused," and denied Black's request for review. Black now seeks review from this court.

ISSUES AND STANDARDS OF REVIEW
¶ 5 Black contends the default and license revocation order should have been set aside under Rule 60(b), Utah Rules of Civil Procedure, and we thus review the agency action under Rule 60(b) in accordance with established standards.[2] It is true that the law disfavors default judgments, see Wright v. Wright, 941 P.2d 646, 649 (Utah Ct.App.1997), and "`[t]he [Commissioner] should be generally indulgent toward setting a judgment aside where there is reasonable justification or excuse for [Black's] failure to answer and when timely application is made.'" Miller v. Martineau & Co., 983 P.2d 1107, 1112 (Utah Ct.App. 1999) (quoting Katz v. Pierce, 732 P.2d 92, 93 (Utah 1986)). Nonetheless, the Commissioner has "considerable discretion under Rule 60(b) in granting or denying a motion to set aside a [default] judgment" and for this court to interfere, "abuse of that discretion must be clearly shown." Katz, 732 P.2d at 93; accord Miller, 983 P.2d at 1112. That is, although "some basis may exist to set aside the default[, we will not conclude the Commissioner] abused [his] discretion in refusing to do so when facts and circumstances support the refusal." Katz, 732 P.2d at 93.[3] Further, we will not upset the Commissioner's factual findings when challenged as unsupported by sufficient evidence unless clearly erroneous. See ProMax Dev. Corp. v. Mattson, 943 P.2d 247, 255 (Utah Ct. App.), cert. denied, 953 P.2d 449 (Utah 1997).

ANALYSIS
¶ 6 To be relieved from the default, Black must show that his motion to set aside was timely, that he has a meritorious defense, and that the default occurred for a reason specified in Rule 60(b). See Erickson v. Schenkers Int'l Forwarders, Inc., 882 P.2d 1147, 1148 (Utah 1994). Because the parties do not dispute that Black made a timely motion and asserted a meritorious defense, our review focuses on whether the Commissioner erred in concluding that Black's default did not occur for reasons described in Rule 60(b).
¶ 7 We first address Black's contention that the Commissioner's factual findings upon which he based the denial were not supported by evidence. Black asserts that the Commissioner erroneously concluded Black was aware of the proceeding and his obligation to respond to the complaint. *611 However, a review of the Commissioner's order reveals that Black has mischaracterized these findings and, indeed, there is no conflict between the findings and the facts as Black describes. Moreover, the Commissioner's findings are supported by the evidence, including the affidavits of Black and Kathi.
¶ 8 For example, the Commissioner did not find that Black had received a copy of the complaint or obtained knowledge of the particular proceeding thereby initiated. Rather, the Commissioner found that Black was aware of the investigation.[4] Knowledge of a continuing investigation does not necessarily confer knowledge that a proceeding to revoke Black's insurance license has been initiated. It was from this factual finding that the Commissioner inferred that Black was "aware that he needed to defend himself and the company."[5]
¶ 9 The thrust of Black's argument is that he was unable to respond to the complaint because he lacked knowledge of it due to his being under a doctor's care. He contends that such facts constitute excusable neglect under Rule 60(b)(1) or otherwise justify setting aside the default under Rule 60(b)(6). Rule 60(b) provides in relevant part:
On motion and upon such terms as are just, the court may in the furtherance of justice relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason justifying relief from the operation of the judgment.
Utah R. Civ. P. 60(b).
¶ 10 To demonstrate that the default was due to excusable neglect, "[t]he movant must show that he has used due diligence and that he was prevented from appearing by circumstances over which he had no control." Airkem Intermountain, Inc. v. Parker, 30 Utah 2d 65, 68, 513 P.2d 429, 431 (1973) (emphasis omitted). Consequently, the Utah Supreme Court has held that "[i]llness alone is not sufficient to make neglect in defending one's action excusable." Warren v. Dixon Ranch Co., 123 Utah 416, 420-21, 260 P.2d 741, 743 (1953). A movant seeking relief may not simply rest on the assertion that he was ill to excuse his inaction; he must show that the nature of the illness incapacitated him such that he was unable to act. See id. at 743 ("We are not told the nature of the illness and it does not appear that appellant ... was so incapacitated that he could not have called an attorney to have his rights and the rights of the corporation protected."). Here, Black merely asserted that he was under a doctor's care and unable to work. He neither described the illness, nor explained how it wholly prevented him from taking the steps required to maintain contact with counsel, Black's Title, or the Department. In the absence of such a showing, Black's assertion does not demonstrate his neglect was excusable.
¶ 11 The Commissioner found that Black was neglectful in maintaining contact with Black's Title and the Department, he did not receive the complaint due to this neglect, and because this neglect was caused by Black's failure to exercise due diligence, it was not to be excused. We agree and conclude the Commissioner did not abuse his discretion.
¶ 12 First, the Department fully complied with the Administrative Procedures Act in notifying Black of the proceeding. The Act provides that "[w]hen adjudicative proceedings are commenced by the agency, the agency shall ... mail the notice of agency action *612 to each party." Utah Code Ann. § 63-46b-3(2)(b)(i) (1997). Here, the Department mailed the complaint to Black at his business by certified mail, and to his residence and counsel by first class mail, postage prepaid, thereby exceeding the statutory notice requirements. Further, rather than requiring personal service of process, the Utah Code imposes obligations, complementary to the agency's duties, upon licensees to ensure they receive notice:
All licensees under this chapter shall register with the commissioner the address and telephone numbers of their principal place of business. If the licensee is an individual, he shall also provide his residence address and telephone number. Licensees shall notify the commissioner, in writing, within 30 days of any change of address or telephone number.
Utah Code Ann. § 31A-23-312(1) (1999). Black, however, failed to conform to these conditions of licensure. Although Black was not living at his residence, but in Cache County, he made no effort to inform the Department of his change in address. Had Black conformed to the requirements of section 31A-23-312(1), the Department would have been able to send a copy of the complaint to him in Cache County. Moreover, in his affidavit, Black stated that he visited Black's Title "on a few occasions ... for a few minutes each." Because Black knew of the Department's investigation, due diligence required at a minimum that Black have requested his mail during these visits.
¶ 13 In Anderson v. Public Service Commission, 839 P.2d 822 (Utah 1992), the Utah Supreme Court rejected the argument that an agency must ensure actual notice and held that similar obligations were reasonable and affirmed the revocation of a certificate of convenience and necessity. See id. at 823, 825-26. In Anderson, the certificate holder argued that because he never received actual notice of the proceedings, the Public Service Commission was required to take additional steps to ensure notice before revoking his certificate. See id. at 825. The court rejected this challenge, noting that the Utah Code required the carrier to maintain an accurate address and agent designation by which he could receive service of process. See id. at 826. The court explained that "[t]his requirement..., with the implicit corollary of making a diligent effort to collect mail sent to that address, is a reasonable burden on the benefit of holding a certificate of convenience and necessity." Id.
¶ 14 Black failed to exercise due diligence in maintaining a correct address on file with the Department or in checking his mail during his occasional visits to Black's Title as required of an insurance licensee. Because Black's lack of notice resulted from this failure, the Commissioner did not abuse his discretion in concluding that Black had not shown excusable neglect. To hold otherwise in the face of Black's failure to act would embrace the actual notice requirement that encourages evasion of service and was expressly rejected by the Utah Supreme Court in Anderson. "Such a result would be unacceptable." Id.
¶ 15 Black also argues that the facts and circumstances justified setting aside the default and order under the residuary clause of Rule 60(b)(6). We reject this claim. "[S]ubsection [(6)] may not be employed for relief when the grounds asserted are encompassed within subsection (1)." Lincoln Benefit Life Ins. Co. v. D.T. Southern Properties, 838 P.2d 672, 674 (Utah Ct. App.1992). Black argues that because he had no knowledge of the complaint, there was no neglect and thus Rule 60(b)(6) applies. Again, however, this lack of knowledge resulted from his own failure to exercise due diligence and thus the Commissioner properly viewed it only in the context of Rule 60(b)(1).[6]

CONCLUSION
¶ 16 We conclude that the Commissioner did not abuse his discretion in denying *613 Black's motion to set aside the default and order. First, the Commissioner's findings were supported by the evidence. Second, the facts and circumstances show that the default resulted from Black's failure to exercise due diligencenot from excusable neglect. Finally, Black has not shown that the default should have been set aside under the residual clause of Rule 60(b)(6). Accordingly, we deny Black's petition for relief.
¶ 17 I CONCUR: MICHAEL J. WILKINS, Presiding Judge.
GREENWOOD, Associate Presiding Judge (dissenting):
¶ 18 I respectfully dissent from my colleagues. The majority opinion aptly and correctly sets forth both the facts of this case and the applicable law, including the standard of review, in assessing the Commissioner's decision refusing to set aside the default judgment against Black. That standard is review for an abuse of discretion and thus requires this court to conclude that the decision of the Commissioner was clearly erroneous. See ProMax Dev. Corp. v. Mattson, 943 P.2d 247, 255 (Utah Ct.App.), cert. denied, 953 P.2d 449 (Utah 1997).
¶ 19 This case presents a very close call. However, given the particular facts herein and certain legal principles, I conclude the Commissioner abused his discretion in not setting aside the default judgment against Black. I concede the affidavit presented by Black could have more persuasively set forth facts to justify granting his motion, but I believe that, even with its deficiencies, it was adequate. I also concede the Department properly served Black with the underlying complaint by complying with rules allowing for service by mail. See Utah Code Ann. § 63-46b-3(2)(b)(i) (1997). I believe, however, that the following facts[1] are sufficient to constitute "excusable neglect" under Utah Rule of Civil Procedure 60(b)(1): During the relevant time period Black was under a doctor's care and unable to work at Black's Title; Black's wife, Kathi Black, solely managed the business; Black never saw the Complaint or the Notice of Formal Adjudicative Proceeding and they were not provided to him by Kathi Black or anyone else at his home or at Black's Title; Black had not changed his permanent address but was residing at a different address in Cache Valley during the time in question; the Department served the Complaint and Notice on Black by mail, as Department rules provide; the default was sought within two or three days of the due date for a response to the Complaint; and Black timely moved to set aside the default.
¶ 20 I do not think that Black's awareness of an ongoing investigation by the Department vitiates the reasonableness of Black's neglect because Kathi Black told him she was taking care of the matter. An investigation would not necessarily inform Black that a Complaint was forthcoming, especially given the lack of information from Kathi Black or Diumenti (on whom he could reasonably rely absent facts of some sort to the contrary) and also given Black's illness, albeit an undescribed illness.
¶ 21 As the majority notes, the recent case of Miller v. Martineau & Co., 983 P.2d 1107 (Utah Ct.App.1999), discusses the legal principles relative to default judgments. Tribunals "`should be generally indulgent toward setting a judgment aside where there is reasonable justification or excuse for [the moving party's] failure to answer and when timely application is made.'" Id. at 1112 (quoting Katz v. Pierce, 732 P.2d 92, 93 (Utah 1986)). Miller also observed that the discretion accorded tribunals should be exercised consistently with equitable principles. See id. The reason for these cautions is that the law generally disfavors default judgments because they deprive parties of the opportunity to appear and defend themselves. See Wright v. Wright, 941 P.2d 646, 649-50 (Utah Ct.App.1997). In Katz, the Utah Supreme Court also stated that trial courts have "broad discretion to balance the equities on a case-by-case basis, including such considerations as the preference to allow *614 the presentation of all claims and defenses, any delay or unfairness of a party's conduct, the need for finality of judgments, and the respective hardship in denying or granting relief." Katz, 732 P.2d at 93 n. 2.
¶ 22 This case law is primarily, if not exclusively, developed from cases filed in state courts, where the rules of civil procedure require personal service in most instances. See Utah R. Civ. P. 5. In administrative proceedings, service by mail is often allowed, and for perfectly valid reasons. Nevertheless, when the facts are close and when the less onerous requirement of service by mail is allowed (rather than personal service) I believe equity leans in the direction of one who claims without refutation to have never received a copy of the complaint. That fact alone would not be sufficient; but combined with other facts, might be. In this case, Black acted timely in moving to set aside the default and claims a meritorious defense to the Department's allegations. It is hard to imagine any substantial prejudice that would accrue to the Department by allowing Black to appear, present his defense, and perhaps preserve his license to pursue his profession. Efficiency of administrative proceedings is not a sufficient reason, in my mind, to justify denying Black his "day in court." Under these circumstances, I believe it was an abuse of discretion to refuse to set aside the default judgment, and I would reverse.
NOTES
[1] Rule 60(b)(6) was previously numbered 60(b)(7). We refer to the current version.
[2] The Utah Administrative Procedures Act provides that upon entry of default, "[a] defaulted party may seek to have the agency set aside the default order, and any order in the adjudicative proceeding issued subsequent to the default order, by following the procedures outlined in the Utah Rules of Civil Procedure." Utah Code Ann. § 63-46b-11(3)(a) (1997).
[3] Because our inquiry focuses upon whether the Commissioner erred by denying the motion in view of the facts and circumstances then before him, and Black made no argument regarding newly discovered evidence to the Commissioner, we do not address his contention that new evidence justifies setting aside the default.
[4] This finding is supported by Black's affidavit in which he states, "Sometime during the fall of 1997, I was informed by Kathi Black that an investigator for the Utah State Insurance Department had raised certain issues regarding Black's Title, and that she was working to resolve them."
[5] Black also argues the Commissioner erroneously found that Diumenti represented Black and concluded that Diumenti's neglect in responding to the complaint may be imputed to Black. This finding is supported by the evidence. Among other things, Black acknowledged in his affidavit that he "reasonably relied upon Mr. Diumenti to attend to any legal requirements and to make such response as was necessary on my behalf." Nonetheless, because, as discussed below, we conclude Black was otherwise inexcusably neglectful, the impact of Diumenti's neglect, if any, is irrelevant for purposes of our review.
[6] We are also not persuaded that Black is entitled to relief under subsection (6) because the Department obtained a default without further notifying Black; Black has simply failed to show any such requirement exists. Further, because Black's own inexcusable neglect caused him to receive the complaint only after default was entered, we are satisfied that Black has received procedural due process.
[1] These facts are gleaned either from Black's affidavit or are uncontroverted in the record on appeal.