**2016 UT App 185**

## THE UTAH COURT OF APPEALS

GO INVEST WISELY LLC,
Appellee,
*v.*
BLAINE MURPHY,
Appellant.

Memorandum Decision
No. 20140822-CA
Filed September 1, 2016

Fourth District Court, Provo Department
The Honorable Samuel D. McVey
No. 090403475

Karthik Nadesan, Attorney for Appellant

Victor A. Sipos, Attorney for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Memorandum Decision, in which JUDGES STEPHEN L. ROTH and KATE A. TOOMEY concurred.

CHRISTIANSEN, Judge:

¶1     Appellant Blaine Murphy appeals the district court's denial of his rule 60(b) motion for postjudgment relief. *See* Utah R. Civ. P. 60(b). We affirm in part, vacate in part, and remand for further proceedings.

BACKGROUND

¶2     In November 2013, Go Invest Wisely LLC (GIW) filed an amended complaint against Murphy, a resident of North Carolina, alleging three causes of action: (1) fraud, (2) negligent misrepresentation, and (3) unlawful formation and use of Bryce Peters Financial Corporation (BPFC) in violation of law. The

complaint also named as defendants Odell Barnes and BPFC. *See generally Go Invest Wisely LLC v. Barnes*, 2016 UT App 184.

¶3      Copies of the summons and amended complaint were served on Murphy at the correctional facility in Ohio where he was then incarcerated. Several days later, Murphy sent a letter to the district court and GIW's counsel "to request an extension of time in which to submit [a] response/answer due to [his] current incarceration." At a pretrial conference on January 6, 2014, the district court acknowledged that it had received Murphy's letter; however, the court did not respond to, or formally rule on, Murphy's request for an extension. Ultimately, in March 2014, the district court entered a default judgment against Murphy for $1,183,496.14.

¶4      Three months later, Murphy's current counsel entered an appearance and filed a motion for relief from the judgment pursuant to rule 60(b) of the Utah Rules of Civil Procedure. In his motion, Murphy requested oral argument and asked the court to set aside the judgment as void for lack of jurisdiction under rule 60(b)(4) and on grounds of mistake and excusable neglect under rule 60(b)(1). In support of his motion, Murphy submitted a declaration setting forth his version of the facts regarding jurisdiction and his reasons for failing to timely answer GIW's complaint. Thereafter, GIW filed an opposition to Murphy's rule 60(b) motion, contending that the district court could exercise jurisdiction over Murphy because, among other things, "Murphy had numerous contacts with GIW, knowing it was a Utah company. Murphy received hundreds of thousands of dollars from GIW related to his criminal acts." GIW's opposition was not supported by any affidavits, declarations, or other sworn testimony, but GIW did submit approximately 430 pages of documents as exhibits (the Motion Exhibits), including what purported to be (1) Murphy's Ohio criminal indictment; (2) a press release from the Cuyahoga County Prosecutor's Office stating that Murphy had been released from prison on January 17, 2014; (3) several email exchanges between GIW and Marty Franks acting on behalf of BPFC; (4) several email

exchanges between GIW and Sandy Warren acting on behalf of BPFC; (5) unsigned copies of purported sales agreements between GIW and BPFC; (6) several email exchanges between GIW and Andi Davis acting on behalf of BPFC; and (7) the district court's order denying codefendant Odell Barnes's motion to dismiss for lack of personal jurisdiction. *See Go Invest Wisely LLC v. Barnes*, 2016 UT App 184.

¶5      Murphy then filed a reply memorandum, asserting that GIW had "failed to establish personal jurisdiction over Murphy" and "failed to proffer an affidavit or other admissible evidence in support of its argument for personal jurisdiction." Murphy contended that the Motion Exhibits constituted "inadmissible hearsay in the absence of a supporting affidavit" and that the district court was therefore required to accept as true the facts in Murphy's declaration. In addition, Murphy attached a supplemental declaration, a copy of a complaint filed against GIW for fraud, an Ohio Court of Appeals decision affirming GIW's misdemeanor convictions entered on no contest pleas, and a Cleveland Municipal Court Capias Warrant Report showing an outstanding warrant for GIW.[1]

¶6      In August 2014, after the conclusion of Barnes's trial, *see generally Barnes*, 2016 UT App 184, ¶ 7 n.1, the district court entered an order denying Murphy's motion for relief from the default judgment. In denying Murphy's motion, the district court stated that "Murphy did not support his motion with any admissible evidence." The court then found that it had jurisdiction over Murphy pursuant to section 78B-3-205 of the Utah Code:

---

1. Black's Law Dictionary defines "capias" as "[a]ny of various types of writs that require an officer to take a named defendant into custody. A capias is often issued when a respondent fails to appear . . . ." *Capias*, Black's Law Dictionary (10th ed. 2014).

> Murphy claims the court lacks general and specific jurisdiction over him. However, he offers no affidavit supporting his alleged facts. Sin[c]e he wants instead to rely on the complaint and seemingly convert his motion to a motion to dismiss on this point, the Court notes the complaint contains facts indicating Murphy was transacting real estate sales with [GIW] which was located in Utah and Murphy received payments sent [to] him from Utah by that Utah company. He did business using emails and couriers going to and from Utah and provided fraudulent materials to Utah. He thus engaged in transactions, supplied documents and caused injury in Utah according to the complaint. Plaintiff also provided exhibits establishing these facts.

The court further concluded that "Murphy also made a general appearance in the case when he wrote and filed a letter asking for an extension of time." Regarding Murphy's mistake claim, the court ruled that Murphy had "assumed the Court gave him more time to answer" and that

> he received no such grant from the Court and his claim to making such an assumption is belied by the fact he waited a half year after being served, including four and a half months after getting out of jail, to do anything, far beyond any reasonable amount of time even if his assumption was correct (he conveniently left out of his "facts" the date he got out of jail—plaintiff had to research the date to respond to the motion).

Likewise, the district court found no excusable neglect for Murphy's failure to respond to the complaint because Murphy provided "no facts showing that once he got out of jail, circumstances made him unable to act for six weeks." According

to the district court, even if Murphy had "been served the day of his release, he would have had to answer in 30 days, but did nothing for 45 days to the default date, and then continued to do nothing thereafter for another 90 days." Consequently, the district court denied Murphy's rule 60(b) motion in its entirety. The court did not address Murphy's claim that the Motion Exhibits submitted by GIW constituted "inadmissible hearsay in the absence of a supporting affidavit."

¶7 Apparently recognizing that the district court's order contained factual errors, GIW filed a motion to correct the record. Specifically, GIW observed that the district court's order erroneously stated "that Murphy did not request oral argument and that Murphy did not support his motion with admissible evidence." Murphy opposed the motion, arguing that the district court lacked jurisdiction to alter the order because Murphy had already filed his notice of appeal and because the relief GIW sought was not authorized under the rules for correcting the record. The district court granted GIW's motion and amended its order, concluding that "[e]ven if [Murphy] requested a hearing related to his motion for relief from the default judgment, a hearing would not have materially affected the Court's decision." In addition, the district court acknowledged that Murphy had filed two declarations related to his motion for relief. The district court stated that it had "reviewed those affidavits and nothing contained therein alters the substantive nature of the rulings in this Court's August 5 Order. Plentiful evidence shows that this Court has personal jurisdiction over Murphy related to this action." Murphy appeals.

## ISSUES AND STANDARDS OF REVIEW

¶8 On appeal, Murphy first contends that the district court erred in denying his motion for relief from judgment under rule 60(b)(4) because the court lacked personal jurisdiction over him. "A denial of a motion to vacate a judgment under rule 60(b) is ordinarily reversed only for an abuse of discretion." *Department*

*of Social Services v. Vijil*, 784 P.2d 1130, 1132 (Utah 1989). "However, when a motion to vacate a judgment is based on a claim of lack of jurisdiction, the district court has no discretion: if jurisdiction is lacking, the judgment cannot stand without denying due process to the one against whom it runs." *Id.* Thus, "the propriety of the jurisdictional determination, and hence the decision not to vacate, becomes a question of law upon which we do not defer to the district court." *Id.* "Although jurisdictional questions present issues of law, the burden of demonstrating a lack of jurisdiction lies on the party challenging jurisdiction." *Jackson Constr. Co. v. Marrs*, 2004 UT 89, ¶ 9, 100 P.3d 1211. "'When a judgment, including a default judgment, has been entered by a court of general jurisdiction, the law presumes that jurisdiction exists, and the burden is on the party attacking jurisdiction to prove its absence.'" *Id.* (quoting *Vijil*, 784 P.2d at 1133).

¶9 Alternatively, Murphy contends that he "should be granted relief as a result of mistake and excusable neglect." We review the district court's denial of Murphy's motion for relief from judgment under rule 60(b)(1) for an abuse of discretion. *See Jones v. Layton/Okland*, 2009 UT 39, ¶ 10, 214 P.3d 859.

ANALYSIS

I. Personal Jurisdiction

¶10 Murphy first contends that he "should be granted relief from the default judgment because Utah does not have personal jurisdiction over [him]." As part of this contention, Murphy argues that, "in the absence of sworn testimony, [the Motion Exhibits] supplied by GIW constitute inadmissible hearsay documents and lack foundation."[2] Thus, according to Murphy,

---

2. In a similar vein, Murphy argues that "[e]vidence from the trial of Odell Barnes is not part of the record for purposes of

(continued…)

(…continued)

Murphy's motion for relief from the default judgment." Before the district court ruled on Murphy's motion for relief, GIW submitted, and the district court received, approximately 900 pages of exhibits as part of Odell Barnes's trial (the Trial Exhibits). *See generally Go Invest Wisely LLC v. Barnes*, 2016 UT App 184. On appeal, GIW's briefing relies heavily on the Trial Exhibits for its assertion that the district court had personal jurisdiction over Murphy, and GIW implicitly asserts that the district court relied on the Trial Exhibits in ruling on Murphy's motion for relief. However, Murphy asserted in his briefing and at oral argument before this court that "contrary to GIW's arguments, there is no basis for believing that the district court considered [the Trial Exhibits] when it ruled on Murphy's Rule 60(b) motion for relief," and he correctly observes that "the Final Order does not identify [the Trial Exhibits] as part of the materials considered by the district court." Murphy further contends that this court "should not rely on [the Trial Exhibits] in deciding whether the district court's decision was erroneous" because "consideration of evidence from the trial of Barnes, held *after* Murphy's motion for relief had been briefed and submitted, would violate due process."

We agree with Murphy that consideration of the Trial Exhibits would be improper. "'Procedural due process requires, at a minimum, timely and adequate notice and an opportunity to be heard in a meaningful way.'" *Osburn v. Bott*, 2011 UT App 138, ¶ 7, 257 P.3d 1028 (quoting *McBride v. Utah State Bar*, 2010 UT 60, ¶ 16, 242 P.3d 769). In this case, as Murphy correctly acknowledges, "after the default judgment was entered against him, Murphy lost his right to contest liability, participate in the trial, or object to the evidence presented at Barnes's trial." Consequently, we conclude that GIW's reliance on the Trial Exhibits is misplaced. And were we to reach the merits of the

(continued…)

GIW did not rebut Murphy's sworn testimony and its "failure to do so is fatal to any claim that Utah has personal jurisdiction over Murphy." Because we conclude that the district court improperly ruled on Murphy's rule 60(b)(4) motion before ruling on his hearsay challenges, we do not reach the merits of the parties' personal-jurisdiction arguments.

¶11    In support of his argument that the Motion Exhibits "constitute inadmissible hearsay documents and lack foundation," Murphy cites *White Pine Ranches v. Osguthorpe*, 731 P.2d 1076 (Utah 1986), in which the Utah Supreme Court held that it was improper for a trial court to consider an abstract of the record from another case that was attached to the plaintiff's motion for summary judgment, because the abstract was unauthenticated and was hearsay, and because the abstract did not constitute an affidavit or support an affidavit. *Id.* at 1077–78. In addition, Murphy cites several federal cases regarding summary judgment that explain that "before they can be treated as admissible, documents [in support of or in opposition to a motion for summary judgment] must 'be authenticated by and attached to an affidavit that meets the requirements of [Federal Rule of Civil Procedure] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.'"[3]

---

(…continued)
jurisdictional issue, we might well agree with Murphy that it would be improper for this court to consider the Trial Exhibits.

3. Murphy refers to the former rule 56(e) of the Federal Rules of Civil Procedure for the requirements of an affidavit or declaration submitted in support of a motion for summary judgment. Rule 56 of the Federal Rules of Civil Procedure was amended in 2010. *See Wilcox v. Career Step, LLC*, 929 F. Supp. 2d 1155, 1161 n.5 (D. Utah 2013). Consequently, rule 56(c)(4), and not rule 56(e), now outlines the procedures governing affidavits or declarations submitted in support of motions for summary judgment. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or

(continued…)

(Quoting *Burnett v. Stagner Hotel Courts, Inc.*, 821 F. Supp. 678, 683 (N.D. Ga. 1993).) *See also, e.g.*, *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550–51 (9th Cir. 1989) ("It is well established that unauthenticated documents cannot be considered on a motion for summary judgment. . . . A document which lacks a proper foundation to authenticate it cannot be used to support a motion for summary judgment.").

¶12    Notwithstanding the foregoing, Murphy has cited no cases—and our research has revealed none—in which a court applied the procedures and requirements of rule 56 to a rule 60(b) motion for postjudgment relief. *Cf. Robinson v. Jones Waldo Holbrook & McDonough, PC*, 2016 UT App 34, ¶ 22 n.6, 369 P.3d 119. Consequently, we are not persuaded that the Motion Exhibits were required to be accompanied by a sworn affidavit pursuant to rule 56.

¶13    However, it does not follow that the Motion Exhibits were not otherwise required to be properly authenticated under rule

---

(…continued)
declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

During the relevant timeframe, rule 56(e) of the Utah Rules of Civil Procedure provided, "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Utah R. Civ. P. 56(e) (2014). In 2015, the Utah Supreme Court amended rule 56 "to adopt the style of the Federal Rule of Civil Procedure 56 without changing the substantive Utah law." *Id.* R. 56 advisory committee notes (2015). The former version of Utah Rule of Civil Procedure 56(e) was nevertheless substantively similar to the current rule 56(c)(4) of the Federal Rules of Civil Procedure.

901 of the Utah Rules of Evidence and, if offered for their truth, to be brought within an exception to the hearsay rule. Rule 901 requires that the proponent of an item of evidence authenticate or identify it with "evidence sufficient to support a finding that the item is what the proponent claims it is" and provides a nonexhaustive list of means by which evidence may be authenticated. *See* Utah R. Evid. 901. Moreover, if the contents of a document are offered for their truth, *see id.* R. 801(c), they must be brought within an exception to the hearsay rule, *see id.* R. 803, 804.

¶14    In denying Murphy's request for relief, the district court concluded that Murphy "engaged in transactions, supplied documents and caused injury in Utah according to the complaint. [GIW] also provided exhibits establishing these facts." Based on this language from the district court's order, we can infer that the district court concluded that the Motion Exhibits were admissible evidence. However, the district court provided no findings, no analysis, and gave no reasoning in support of that conclusion, and nothing in the court's order indicates that the court specifically considered and rejected Murphy's hearsay arguments regarding the Motion Exhibits.

¶15 Consequently, because the district court failed to meaningfully address Murphy's argument that the Motion Exhibits constituted inadmissible hearsay, we are unable to determine on what grounds the district court found the twenty-four Motion Exhibits to be admissible or the extent to which its ultimate conclusion was based on them. For example, we do not know whether the district court determined that the individual exhibits required authentication to be admissible and, if so, whether they were sufficiently authenticated or self-authenticating. Likewise, we do not know if the district court determined that the individual exhibits either did not constitute hearsay or were admissible under an exception to the hearsay rule. Additionally, we are unable to determine which of the twenty-four Motion Exhibits the district court specifically relied on in determining that it had personal jurisdiction over Murphy,

or whether the court could have reached the same result without those exhibits. Accordingly, although the question of whether the district court's exercise of personal jurisdiction over Murphy was proper presents a question of law, which we review for correctness, *see supra* ¶ 8, we are unable to determine the propriety of the district court's jurisdictional determination, *see Acton v. Deliran*, 737 P.2d 996, 999 (Utah 1987) ("The findings of fact must show that the court's judgment or decree follows logically from, and is supported by, the evidence. The findings should be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." (citations and internal quotation marks omitted)).

¶16   Therefore, we vacate the district court's decision and remand with instructions to determine which, if any, of the individual Motion Exhibits that the court relied on constitute admissible evidence. Once it has decided the admissibility of the Motion Exhibits, the district court should again consider whether its exercise of personal jurisdiction over Murphy is proper and identify the admissible evidence on which its ruling is based.[4]

---

4. Based on the district court's conclusion that Murphy "made a general appearance in this case when he wrote and filed the letter asking for an extension of time," Murphy also contends that his letter to the district court asking for "an extension of time in which to submit [a] response/answer due to [his] current incarceration" did not waive his right to challenge personal jurisdiction. The Utah Supreme Court has acknowledged that "[t]he distinction between general and special appearances has been abolished by the language contained in Rule 12(b) [of the Utah Rules of Civil Procedure] as follows: 'No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion or by further pleading after the denial of such motion or objection.'" (continued…)

## II. Mistake and Excusable Neglect

¶17   Murphy alternatively argues that he "should be granted relief [from the default judgment] as a result of mistake and excusable negligence." Pursuant to rule 60(b) of the Utah Rules of Civil Procedure, "[o]n motion and upon such terms as are just, the court may in the furtherance of justice relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (b)(1) mistake, inadvertence, surprise, or excusable neglect." Utah R. Civ. P. 60(b)(1). "To be entitled to relief under the rule, a party must show that '(1) the motion is timely; (2) there is a basis for granting relief under one of the subsections of 60(b); and (3) the movant has alleged a meritorious defense.'" *Asset Acceptance LLC v. Stocks*, 2016 UT App 84, ¶ 13 (quoting *Menzies v. Galetka*, 2006 UT 81, ¶ 64, 150 P.3d 480).

¶18   As a preliminary matter, the parties dispute whether Murphy's rule 60(b)(1) motion was timely. A motion made

---

(…continued)
*Ted R. Brown & Assocs., Inc. v. Carnes Corp.*, 547 P.2d 206, 207 (Utah 1976) (quoting Utah R. Civ. P. 12(b)). Moreover, the Utah Supreme Court has held that a defendant did not waive its jurisdictional claim by sending a pro se letter to plaintiff's counsel (but addressed to the district court) where the defendant "did not ask for affirmative relief of the court" and "merely denied responsibility for the injury and identified the case by its number." *Parry v. Ernst Home Center Corp.*, 779 P.2d 659, 661 (Utah 1989). Here, Murphy's pro se letter to the district court and GIW's counsel did not ask for affirmative relief of a substantive nature; rather, Murphy's letter merely sought an "an extension of time in which to submit [a] response/answer due to [his] current incarceration." Consequently, we conclude that Murphy's letter did not amount to a general appearance in the case or otherwise waive his jurisdictional defense.

under rule 60(b)(1) "must be filed within a reasonable time and . . . not more than 90 days after entry of the judgment or order."[5] Utah R. Civ. P. 60(c). Here, the district court entered judgment on March 10, 2014, and Murphy filed his motion for relief on Monday, June 9, 2014. Thus, Murphy filed his motion ninety-one calendar days after the court entered judgment. *See id.* R. 6(a)(1) ("When the period is stated in days or a longer unit of time: . . . exclude the day of the event that triggers the period; . . . count every day, including intermediate Saturdays, Sundays, and legal holidays; and . . . include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday or legal holiday."). However, because the ninety-day deadline fell on Sunday, June 8, 2014, Murphy had until the end of the day on Monday, June 9, 2014, to timely file his motion. *See id.* Consequently, Murphy's motion for relief was timely.

¶19    Murphy contends that he should have been granted relief under rule 60(b)(1) because "when the Court failed to respond in any manner [to his request for an extension of time], Murphy reasonably, if mistakenly, believed that he had been granted additional time." This claimed "mistake" serves as Murphy's excuse for neglecting to timely file an answer. According to Murphy, he was unable to respond to GIW's complaint in a timely manner because he was incarcerated in Ohio at the time of service and "had limited access to funds for retaining an attorney," resulting in his inability to search for an attorney in Utah. Murphy contends that he nonetheless acted with due diligence when he sent a letter to the district court requesting additional time to respond to GIW's complaint. Murphy also contends that by sending his request for an extension of time to

---

5. Whereas a motion made under rule 60(b)(1), (2), and (3) must be filed "not more than 90 days after entry of the judgment or order," a motion made under rule 60(b)(4), (5), and (6) must be filed *within a reasonable time*. *See* Utah R. Civ. P. 60(c).

the district court, he did "*exactly* what a reasonable person would have done under the circumstances."

¶20  In its order denying Murphy's motion for relief, the district court observed that it did not grant Murphy an extension of time to answer and that Murphy's "claim to making such an assumption is belied by the fact he waited a half year after being served, including four and a half months after getting out of jail, to do anything, far beyond any reasonable amount of time even if his assumption was correct." The district court further found that Murphy

> provides no facts showing that once he had got out of jail, circumstances made him unable to act for six weeks. Had he even been served the day of his release, he would have had to answer in 30 days, but did nothing for 45 days to the default date, and then continued to do nothing thereafter for 90 days. This is not excusable neglect because Murphy presents no evidence of diligence on his part. It is noteworthy Murphy never told the Court or counsel he was out of jail and asked for an extension of time at that point. He did nothing for seven weeks to find counsel or contact the Court. He presents no facts saying anything "prevented" him from doing something. Any neglect was not excusable. Hiding one's head in the sand or doing nothing is not excusable.

(Citation omitted.) We agree with the district court, and conclude that Murphy's inaction does not qualify for relief as excusable neglect.

¶21  "To demonstrate that [a] default was due to excusable neglect, '[t]he movant must show that he has used due diligence and that he was prevented from appearing by circumstances over which he had no control.'" *Black's Title, Inc. v. Utah State Ins. Dep't*, 1999 UT App 330, ¶ 10, 991 P.2d 607 (second alteration in

original) (quoting *Airkem Intermountain, Inc. v. Parker*, 513 P.2d 429, 431 (Utah 1973)). "Due diligence is established where the failure to act was the result of the neglect one would expect from a reasonably prudent person under similar circumstances." *Sewell v. Xpress Lube*, 2013 UT 61, ¶ 29, 321 P.3d 1080 (ellipsis, citation, and internal quotation marks omitted); *see also Bodell Constr. Co. v. Robbins*, 2014 UT App 203, ¶ 10, 334 P.3d 1004 ("[I]n determining whether a party has exercised due diligence sufficient to justify excusing it from the full consequences of its neglect under rule 60(b), the trial court must consider whether the actions of the party seeking relief were sufficiently diligent and responsible, in light of the attendant circumstances." (citation and internal quotation marks omitted)).

¶22 Although Murphy contends that he acted as a reasonable person would have when he took affirmative steps to address the complaint by sending his letter requesting "an extension so that he could have sufficient time to access his funds and retain a lawyer," that was the *only* action Murphy took in the six months after he was served. In all fairness to Murphy, the district court could have informed him of the status of his request. Murphy has not, however, explained why it was reasonable for him to construe the district court's silence as granting him an extension of time.

¶23 Moreover, when Murphy did not hear from the district court, it was unreasonable for him to assume that his request had been granted and to do nothing for six months thereafter. This is especially true given that Murphy was released from prison no later than January 22, 2014, yet took no action relating to the lawsuit between that date and the default-judgment date—March 10, 2014—and no action for three months after the default-judgment date. And, as the district court correctly observed, Murphy has presented no evidence that he was somehow "prevented from appearing by circumstances over which he had no control" once he got out of prison. *See Black's Title*, 1999 UT App 330, ¶ 10 (citation and internal quotation marks omitted). Because Murphy has not shown that there is a

basis for granting relief under rule 60(b)(1), we need not address whether he has alleged a meritorious defense. *See Asset Acceptance LLC v. Stocks*, 2016 UT App 84, ¶ 13. We conclude that the district court did not abuse its discretion in rejecting Murphy's rule 60(b)(1) motion. *See Jones v. Layton/Okland*, 2009 UT 39, ¶ 10, 214 P.3d 859 ("We review a district court's denial of a rule 60(b) motion for relief from judgment for an abuse of discretion.").

CONCLUSION

¶24   We affirm the district court's denial of Murphy's motion for relief pursuant to rule 60(b)(1) of the Utah Rules of Civil Procedure. However, we vacate the district court's denial of Murphy's motion to set aside the default judgment pursuant to rule 60(b)(4) and remand this case to the district court so that the court may determine whether any of the individual Motion Exhibits constitute admissible evidence and thereby determine whether the court's exercise of personal jurisdiction over Murphy is proper.

———————